BERRY v STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY

Docket No. 184236. Submitted July 9, 1996, at Grand Rapids. Decided
October 11, 1996, at 9:00 A.M.

Tella K. Berry brought an action in the Isabella Circuit Court against
State Farm Mutual Automobile Insurance Company, seeking a
determination whether the defendant was required to arbitrate her
claim for no-fault benefits under a policy the defendant had issued
to her. The plaintiff's automobile had struck a piece of metal lying
in the traffic lane in which she had been traveling. The insurance
policy provided for uninsured motorist coverage and provided that
an uninsured motor vehicle included a hit-and-run vehicle whose
owner or driver remained unknown where that vehicle struck the
insured or the insured's vehicle, causing bodily injury to the
insured. The proofs at trial showed that a farmer had observed a
truck pulling a trailer with a load of scrap metal stopped on the
road about one-half mile from the scene of plaintiff's accident
shortly before the accident occurred, and the driver was inspecting
his load. The court, Paul H. Chamberlain, J., found that the proofs
established that the piece of metal that had caused the plaintiff's
accident had come from the unidentified truck and trailer carrying
scrap metal and that the plaintiff was entitled to coverage under
the uninsured motorist provision of the insurance policy. Accord-
ingly, the court ordered that the claim be arbitrated in accordance
with the provisions of the insurance policy. The defendant
appealed.

The Court of Appeals *held*:

1. Findings of fact by a trial court will not be set aside unless
clearly erroneous. Circumstantial evidence and the reasonable
inferences therefrom can constitute satisfactory proof. Here, the
trial court properly inferred from the testimony concerning the
unidentified truck and trailer carrying scrap metal that the piece of
metal that the plaintiff struck had come from that vehicle. The trial
court's findings of fact cannot be said to be clearly erroneous.

2. Because uninsured motorist coverage is not required by stat-
ute, the question whether there is coverage turns on the language
of the contract of insurance. The definitions contained in an insur-

ance policy control, but any doubtful or ambiguous terms must be construed in favor of the insured and against the insurer.

3. A requirement that uninsured motorist coverage is available only where a hit-and-run vehicle strikes or makes contact with an insured or an insured's vehicle is enforceable. However, physical contact requirements have been construed broadly to include indirect physical contact, such as where a stone is thrown up by or an object is cast off from a hit-and-run vehicle, as long as a substantial physical nexus between the hit-and-run vehicle and the stone or object is established by the proofs. The facts of this case were sufficient to establish the necessary substantial physical nexus between the unidentified truck and trailer carrying scrap metal and the object that was struck by the plaintiff.

4. Although the presence of a continuous and contemporaneously transmitted force is significant, it is not dispositive of the question whether there is a substantial physical nexus. Here, while there was no continuous and contemporaneously transmitted force, the testimony of the farmer established a continuous sequence of events to link the unidentified truck and trailer with the plaintiff's accident. Accordingly, the trial court properly ordered the matter to arbitration pursuant to the provisions of the insurance policy.

Affirmed.

INSURANCE — AUTOMOBILES — UNINSURED MOTORIST PROVISIONS — PHYSICAL CONTACT REQUIREMENT — CONTINUOUS AND CONTEMPORANEOUSLY TRANSMITTED FORCE.

Direct physical contact with a hit-and-run vehicle itself is not required in order for an insured to recover under an uninsured motorist provision of an automobile insurance policy that requires that the hit-and-run vehicle strike or come into physical contact with the insured or the insured's vehicle where the proofs establish a substantial nexus between the hit-and-run vehicle and an object cast off from or struck by that vehicle that thereafter comes into physical contact with the insured or the insured's vehicle, causing bodily injury; a finding of a substantial nexus between the hit-and-run vehicle and an object cast off from or struck by that vehicle that thereafter comes into physical contact with the insured or the insured's vehicle does not require a finding that there was a continuous and contemporaneously transmitted force imparted by the hit-and-run vehicle that resulted in the physical contact with the insured or the insured's vehicle.

*Jay F. Trucks*, for the plaintiff.

*Bensinger, Cotant, Menkes & Aardema, P.C.* (by *Michael E. Menkes*), for the defendant.

Before: DOCTOROFF, C.J., and WAHLS and SMOLENSKI, JJ.

PER CURIAM. Defendant, State Farm Mutual Automobile Insurance Company, appeals as of right an order, following a bench trial, providing that the claim of plaintiff, Tella Katherine Berry, for uninsured motorist benefits under a no-fault policy of insurance issued to her by defendant be arbitrated in accordance with the terms and conditions of the policy. We affirm.

The insurance policy provides in relevant part as follows:

> We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle.

The policy defines "uninsured motor vehicle," in relevant part, as

> a "hit-and-run" land motor vehicle whose owner or driver remains unknown and which strikes:
>     a. the insured or
>     b. the vehicle the insured is occupying
> and causes bodily injury to the insured.

The policy further provides for arbitration should a dispute arise between the parties concerning whether the insured is legally entitled to collect damages from the owner or driver of an uninsured vehicle.

The trial testimony of plaintiff and William Courter may be summarized as follows. In August 1992, plain-

tiff was driving south on Luce Road when she approached the crest of a hill. She had not seen any traffic in front of her in the southbound lane. As a pickup truck approached her from the opposite direction, she saw an "object" in the southbound lane. Because she could not get over into the northbound lane, she attempted to drive over the object. The object struck and damaged the underside of her car, causing her to lose control. The car came to rest in a field.

Earlier in the day of plaintiff's accident, Courter had been baling hay in a field along Luce Road. Beginning at approximately 1:00 P.M., Courter had loaded his wagon with hay in a field south of the eventual accident site, had hauled the wagon north on Luce Road to a storage building near the accident site, had unloaded the wagon, had traveled south on Luce Road back to the field, and had picked up another load. Courter had continued to make this trip every ten to fifteen minutes.

At approximately 3:30 or 4:00 P.M., and before plaintiff's accident, while again leaving the field to travel north on Luce Road during one of his trips, Courter observed a southbound pickup truck, which was hauling a two-wheeled trailer with a load of scrap iron or steel, stopped on Luce Road approximately one-half mile south of the subsequent accident site. The trailer had "roughly two foot or three foot sides," but was not covered with a tarpaulin. Courter observed a man back by the trailer "looking his load over." Courter did not observe the man tightening any straps or picking up anything.

While traveling north on Luce Road during this same trip, Courter observed in the southbound lane at

the site of the subsequent accident "a piece of metal, oh, I'd say approximately sixteen or eighteen inches long, and it looked like it had a sprocket on the end of it." This metal piece had not been on the road during Courter's previous trip. Courter, without stopping and picking up the metal piece, turned into the storage area and unloaded the wagon. By the time Courter began his trip back to the field, plaintiff's accident had occurred. Courter estimated that the accident occurred approximately fifteen minutes after he observed the stopped pickup truck, although "it could've been five minutes one way or the other." Courter saw no other activity that could have accounted for the metal piece being in the road. However, Courter acknowledged that other vehicles could have gone by while he was in the barn.

Following plaintiff's accident and defendant's refusal to arbitrate plaintiff's uninsured motorist claim, plaintiff filed suit. Following the bench trial, the court ruled in relevant part as follows:

> Therefore, the court concludes or finds that the scrap metal did come from the vehicle pulled over at the side of the road; and that as short as five minutes, as long as fifteen minutes after Mr. Courter observed the scrap metal in the road and the pickup truck pulling the trailer with the scrap metal on it that the accident occurred. I find then that there is coverage under the uninsured motorist provisions of the insurance policy. It was in the use of the unidentified vehicle that the scrap metal was deposited on the roadway; that the vehicle is an unknown vehicle which struck the insured. I guess the real question here is does a piece of metal coming from an unknown vehicle strike another vehicle after it comes to rest, or does there need to be continuous force. In other words, does the object have to come off of the unknown truck in the case and hit the vehicle without stopping and laying in the roadway for five to fifteen

minutes? The court concludes that the cases cited by counsel in their briefs do support the finding and holding of the court today. Therefore, I am ordering this matter to arbitration.

On appeal, defendant argues that the court erred in finding that the piece of metal in the southbound lane of Luce Road was dropped from the truck and trailer observed by Courter. Specifically, defendant contends that there are any number of explanations concerning the origin of the metal piece, particularly where neither plaintiff nor Courter actually saw any metal fall from the truck and trailer.

Pursuant to MCR 2.613(C):

> Findings of fact by the trial court may not be set aside unless clearly erroneous. In the application of this principle, regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it.

A finding is clearly erroneous when, although there is evidence to support the finding, this Court is left with a definite and firm conviction that a mistake has been made. *Triple E Produce Corp v Mastronardi Produce, Ltd*, 209 Mich App 165, 171; 530 NW2d 772 (1995). Circumstantial evidence and the reasonable inferences therefrom can constitute satisfactory proof. See, e.g., *People v Greenwood*, 209 Mich App 470, 472; 531 NW2d 771 (1995). However, inferences may be drawn only from established facts, not from other inferences. See, e.g., *People v McWilson*, 104 Mich App 550, 555; 305 NW2d 536 (1981).

In this case, the trial court observed and accepted the testimony of plaintiff and Courter. When observed by Courter, the truck and trailer was stopped and fac-

ing in a southbound direction approximately one-half mile south of the subsequent accident site. The truck's trailer contained an uncovered load of scrap metal that was being inspected by a man. A piece of metal was observed by Courter shortly thereafter in the southbound lane at the site of the subsequent accident. These established facts give rise to the logical inference that the piece of metal in the southbound lane of Luce Road came from the southbound truck pulling a trailer filled with scrap metal. We are not left with a definite and firm conviction that the trial court made a mistake in so finding.

Next, defendant takes issue with the court's legal conclusion that plaintiff was covered under the uninsured motorist provision of the insurance policy. Defendant acknowledges, and we agree, that the policy's requirement that a hit-and-run vehicle must strike the insured's vehicle constitutes a requirement of physical contact between the hit-and-run vehicle and the insured's vehicle. Defendant's arguments all concern whether physical contact between a hit-and-run vehicle and plaintiff's vehicle occurred in this case.

Uninsured motorist coverage is not required by statute. *Citizens Ins Co of America v Buck*, 216 Mich App 217, 224; 548 NW2d 680 (1996). However, such coverage may be purchased to provide an insured with a source of recovery if the tortfeasor is uninsured. *Id.* Because uninsured motorist benefits are not required by statute, the contract of insurance determines under what circumstances such benefits will be awarded. *Rohlman v Hawkeye-Security Ins Co*, 442 Mich 520, 525; 502 NW2d 310 (1993). The policy definitions control. *Id.* Thus, this Court's duty is to

determine from the language of the policy the parties' apparent intention. Doubtful or ambiguous terms must be construed in favor of the insured and against the insurer, the drafter of the policy. *Rohlman v Hawkeye-Security Ins Co (On Remand)*, 207 Mich App 344, 350; 526 NW2d 183 (1994).

The requirement in an uninsured motorist policy of "physical contact" between a hit-and-run vehicle and the insured or the insured's vehicle is enforceable in Michigan. *Kreager v State Farm Mutual Automobile Ins Co*, 197 Mich App 577, 582; 496 NW2d 346 (1992). The physical contact requirement is designed to reduce the possibility of fraudulent phantom vehicle claims. *Hill v Citizens Ins Co of America*, 157 Mich App 383, 394; 403 NW2d 147 (1987). Thus, there must be some sort of actual physical contact between the hit-and-run vehicle and the insured or the insured's vehicle. See, e.g., *Said v Auto Club Ins Ass'n*, 152 Mich App 240; 393 NW2d 598 (1986) (swerving to avoid a hit-and-run vehicle does not satisfy the physical contact requirement); see also *Auto Club Ins Ass'n v Methner*, 127 Mich App 683; 339 NW2d 234 (1983). However, this Court has construed the physical contact requirement broadly to include indirect physical contact, such as where a rock is thrown or an object is cast off by the hit-and-run vehicle, as long as a substantial physical nexus between the disappearing vehicle and the object cast off or struck is established by the proofs. *Kreager, supra; Hill, supra.* In this case, defendant argues that an insufficient nexus existed between a hit-and-run vehicle and the metal piece lying in the road.

In *Hill*, the parties stipulated that a rock came through the windshield of the insured's vehicle, caus-

ing his death, just as the insured's vehicle passed a camper traveling in the opposite direction, that the plaintiff would testify that the camper propelled the rock, and that the defendant had no evidence of what caused the rock to become airborne. *Id.* at 384-385. This Court analyzed the language of the uninsured motorist provisions of the parties' insurance policy that required "physical contact" between a hit-and-run vehicle and the insured or the insured's vehicle. *Id.* at 385. This Court held that the substantial physical nexus requirement was established, thus satisfying the requirement of physical contact, by the parties' stipulated facts. *Id.* at 394. In reaching this conclusion, this Court relied, in part, on *Kersten v DAIIE*, 82 Mich App 459; 267 NW2d 425 (1978), and *Adams v Zajac*, 110 Mich App 522; 313 NW2d 347 (1981).

In *Kersten, supra* at 464, a truck carrying a load of scrap tires spilled a number of tires on a freeway at approximately noon. The insured's vehicle later struck a spinning truck tire and rim assembly while driving in the area of the tire spill between 10:00 P.M. and 11:00 P.M. the same day. *Id.* Evidence was presented that the tire and rim assembly that the insured struck could have been either a scrap tire or a spare tire. *Id.* at 465. This Court analyzed the language of the uninsured motorist provisions of the parties' policy that required "physical contact" between a hit-and-run vehicle and the insured or the insured's vehicle. This Court also analyzed the language of § 12 of the Motor Vehicle Accident Claims Act (MVACA), MCL 257.1101 *et seq.*; MSA 9.2801 *et seq.*,[1] which pro-

---

[1] The MVACA does not apply to accidents occurring after January 2, 1976. See MCL 257.1133; MSA 9.2833; see also *Methner, supra* at 689.

vided that persons injured by unidentified vehicles and drivers could bring an action against the Secretary of State if there was physical contact between the unidentified vehicle and the plaintiff or the plaintiff's vehicle. *Kersten, supra* at 462-464. This Court held that the chain of physical contact between the hit-and-run vehicle and the insured's vehicle was too attenuated and too inferentially established to satisfy the physical contact requirement of the policy and statute as a matter of law. *Id.* at 475. This Court noted that no one saw the truck or trailer that dropped the tire and that nothing linked the spinning tire and rim with the hit-and-run vehicle except an inference drawn from the presence of the spinning tire and rim in the road. *Id.* at 472. This Court indicated that clearly definable or objective evidence of a link between a disappearing vehicle and the insured's vehicle was required. *Id.*

In *Adams, supra* at 525-526, the plaintiff's decedent was killed when his vehicle struck or swerved to avoid a truck tire and rim assembly located on a freeway. Just before the accident, a flatbed tractor-trailer was observed parked along the freeway near the tire. The truck left the scene as the accident occurred. This Court analyzed the physical contact requirement contained in § 12 of the MVACA. *Adams, supra* at 525-526. In reversing the trial court's grant of the Secretary of State's motion to dismiss, this Court distinguished *Kersten* and held that, on these facts, the questions whether physical contact did occur and, if so, whether the contact was with a part of the hit-and-run vehicle were for the trier of fact. *Id.* at 527-529.

In this case, Courter observed a truck and trailer loaded with scrap metal, approximately one-half mile south of the accident site, within approximately fifteen minutes of the accident. A man was inspecting the load of metal. The court reasonably concluded that the man would not have stopped unless he were concerned about the load of metal. Had there not been evidence of "scrap metal" in the trailer, a different outcome might be warranted in this case. However, given that a man was inspecting a load of scrap metal in the trailer at a time and location that was temporally and spatially proximate to plaintiff's striking a piece of metal in the road, we conclude that the legal requirement of a substantial physical nexus between the hit-and-run vehicle and the object struck by plaintiff was established. *Hill, supra; Kreager, supra.*

Next, defendant contends that there was no continuous and contemporaneous force transmitted from the hit-and-run vehicle to plaintiff's vehicle in this case. In so contending, defendant relies on *Kersten, supra* at 471, in which this Court required that the indirect contact between the insured's vehicle and the hit-and-run vehicle be carried "through to the plaintiff's vehicle by a continuous and contemporaneously transmitted force from the hit-and-run vehicle." In *Kersten,* this Court explained that the requirement of a continuous and contemporaneous force provides

convincing evidence of a hit-and-run vehicle. But where a tire or a trunk or other piece of cargo lying on the highway is struck and, unlike the propelled stone cases, there is no clear testimony but only an inference of a contemporaneous and continuing propulsion of the object from a disappearing hit-and-run vehicle, recovery is denied. The chain of

> causation is stretched too thin and is too speculative. [*Id.* at 471-472.]

However, in *Adams, supra* at 528, this Court rejected the "continuous and contemporaneously transmitted force" requirement of *Kersten*: "Whether the part is still attached or comes to rest after being detached from the vehicle makes little difference in principle, although in the latter case it might present some difficulties, as are present here, in carrying the burden of proof." In *Hill, supra* at 389, this Court noted that the *Adams* Court had rejected the "continuous and contemporaneously transmitted force" requirement of *Kersten*. However, in *Hill*, this Court had no occasion to specifically address this issue, because there a rock inferentially was propelled through the windshield of an insured's vehicle by an unidentified vehicle.

We conclude that the presence of a "continuous and contemporaneously transmitted force" is a significant, but not dispositive, factor to be considered in indirect contact cases in determining whether the requisite substantial physical nexus has been established. In this case, there was no continuous and contemporaneously transmitted force from the hit-and-run vehicle where the piece of metal was observed lying in the road. However, in this case, unlike in *Kersten*, and even more so than in *Adams*, there is testimony that provides the convincing and objective evidence of a hit-and-run vehicle in the absence of a continuous and contemporaneously transmitted force. In other words, Courter's testimony establishes a continuous sequence of events with a clearly definable beginning and ending, resulting in plaintiff's coming into contact with the piece of metal. See *Kersten*,

*supra* at 473. The circumstances of this case are not highly susceptible to fraud. *Id.* Accordingly, we find no error in this regard.

Next, defendant argues that plaintiff did not come into contact "with an 'integral part' of any other vehicle." In *Adams, supra* at 528, this Court held that the requirement of physical contact is satisfied "when a vehicle or an integral part of it comes into physical contact with another vehicle." However, in *Hill*, this Court found the requirement of physical contact satisfied when a rock was propelled through the windshield of the insured's vehicle as it passed a camper. In *Hill*, this Court stated that a substantial physical nexus must be shown "between the disappearing vehicle *and the object cast off or struck.*" *Id.* at 394 (emphasis added); accord *Kreager, supra* at 582. In this case, the trial court found that the metal piece lying in the road that plaintiff's vehicle struck was deposited by the hit-and-run vehicle itself, i.e., the truck hauling a trailer of scrap metal. Cf. *id.* at 583. Accordingly, we find no error.

We affirm the trial court's order that plaintiff's claim for uninsured motorist benefits be submitted to arbitration.