# STATE OF MICHIGAN

# COURT OF APPEALS

---

KAREN DENISE MCJIMPSON,

        Plaintiff-Appellee,

v

AUTO CLUB GROUP INSURANCE
COMPANY,

        Defendant-Appellant.

FOR PUBLICATION
May 12, 2016
9:00 a.m.

No. 320671
Wayne Circuit Court
LC No. 13-001882-NI

---

Before: WILDER, P.J., and SHAPIRO and RONAYNE KRAUSE, JJ.

WILDER, J.

Defendant, Auto Club Group Insurance Company, appeals as of right an order denying its motion for partial summary disposition. We reverse and remand for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

This action arises out of injuries sustained on April 5, 2012 by plaintiff, Karen Denise McJimpson, when a piece of metal flew off an unidentified 18-wheeler semi-truck and struck her car as she drove eastbound on I-96 between Novi Road and Beck Road. The semi-truck was two cars ahead of plaintiff's vehicle, driving in the same direction. Suddenly, an object flew off the truck, and vehicles near the truck started swerving. Plaintiff did not see the object strike the vehicle in front of her before the object struck plaintiff's car and shattered her windshield. Plaintiff slammed on her brakes, which caused the object to rebound off the hood of her car, strike the roof of the car, and finally come to rest in the road. The driver of the truck never stopped.

Following the incident, the Michigan State Trooper who arrived to assist plaintiff pointed out the piece of sheet metal that he believed hit her vehicle. During her deposition, plaintiff described the object as an arc-shaped piece of silvery metal and estimated that the object was approximately half the size of her car's windshield. Plaintiff sustained numerous cuts and bruises during the accident and was eventually diagnosed with a "SLAP" tear in her left shoulder, strains and sprains in her back and neck, and spinal injuries.

Plaintiff made a claim for uninsured motorist benefits under the insurance policy that she held with defendant. Under the policy, plaintiff was entitled to uninsured motorist benefits if the

vehicle that caused her injuries met the contractual definition of an "uninsured motor vehicle," which, in relevant part, included "a hit-and-run **motor vehicle** of which the operator and owner are unknown and which makes *direct physical contact* with: (1) **you** or a **resident relative**, or (2) a **motor vehicle** which an **insured person** is **occupying**." (Italicized emphasis added; bold emphasis in original.)

Plaintiff filed a complaint against defendant alleging that defendant had unlawfully or unreasonably refused or neglected to pay uninsured motorist benefits.[1] Defendant filed a motion for summary disposition under MCR 2.116(C)(8) and MCR 2.116(C)(10) on the grounds that the facts, as alleged, and testified to, by plaintiff, did not meet the requirements of the uninsured motorist provision because plaintiff conceded that she was struck by an object propelled by or from the unidentified vehicle and not by the vehicle itself.

In her response, plaintiff distinguished the unpublished case cited by defendant in its brief and argued that the policy language unambiguously provided coverage under these circumstances. She further argued that at a minimum, the terms of the policy were ambiguous and that accordingly they should be interpreted in favor of the insured. The trial court denied defendant's motion for summary disposition, stating:

> [Testimony that the object "came off the truck and hit the Plaintiff's car" is] the only testimony we have. I read the cases that were cited. I don't think anything is really on point. I think the language in [defendant's] policy is ambiguous. For that one reason I'm going to interpret the meaning against [defendant] because it is ambiguous and [defendant is] the drafter.
>
> Secondly, I think there was direct physical contact. It flew through the air. It wasn't interrupted by anything. It directly flew off the truck through the air and hit the Plaintiff's car and caused the accident. That's my interpretation, so your motion is denied.

On February 18, 2014, the trial court entered an order denying defendant's motion for partial summary disposition, and this appeal ensued.

## II. STANDARDS OF REVIEW

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 115; 839 NW2d 223 (2013). Additionally, this Court reviews de novo, as a question of law, a trial court's construction and interpretation of an insurance policy and conclusion regarding whether the terms of the policy are ambiguous. *Dancey v Travelers Prop Cas Co*, 288 Mich App 1, 7; 792 NW2d 372 (2010).

---

[1] Plaintiff's complaint also alleged that defendant had failed to fully pay her PIP benefits, but the PIP benefits is not at issue in this appeal.

While the trial court did not specify the particular subrule of MCR 2.116(C) under which it denied defendant's motion for partial summary disposition, in light of the trial court's statements at the motion hearing regarding plaintiff's deposition testimony, it is apparent that the trial court considered documentation beyond the pleadings and, therefore, ruled on the motion under MCR 2.116(C)(10). See *Besic v Citizens Ins Co of the Midwest*, 290 Mich App 19, 23; 800 NW2d 93 (2010). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). In deciding a motion under MCR 2.116(C)(10), this Court reviews "the entire record, including affidavits, depositions, admissions, or other documentary evidence," in the light most favorable to the nonmoving party. *Gorman*, 302 Mich App at 115. To avoid dismissal on a motion for summary disposition under MCR 2.116(C)(10), the nonmoving party must "show[] by evidentiary materials that a genuine issue of disputed fact exists, and the disputed factual issue must be material to the dispositive legal claim[.]" *Auto Club Ins Ass'n v State Auto Mut Ins Co*, 258 Mich App 328, 333; 671 NW2d 132 (2003) (citations omitted); see also MCR 2.116(G)(4). Conversely, "[a] trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the affidavits or other documentary evidence show that there is no genuine issue with respect to any material fact and that the moving party is entitled to judgment as a matter of law." *Sanders v Perfecting Church*, 303 Mich App 1, 4; 840 NW2d 401 (2013).

## III. ANALYSIS

On appeal, defendant argues that plaintiff is not entitled to uninsured motorist benefits as a matter of law under the language of the insurance policy, as the phrase "direct physical contact" is not ambiguous, and the undisputed facts demonstrate that the unidentified semi-truck never made "direct physical contact" with plaintiff's vehicle. We agree.

As the Michigan Supreme Court recognized in *Rory v Continental Ins Co*, 473 Mich 457, 465-466; 703 NW2d 23 (2005):

> Uninsured motorist insurance permits an injured motorist to obtain coverage from his or her own insurance company to the extent that a third-party claim would be permitted against the uninsured at-fault driver. Uninsured motorist coverage is optional—it is not compulsory coverage mandated by the no-fault act. Accordingly, the rights and limitations of such coverage are purely contractual and are construed without reference to the no-fault act. [Citations omitted.]

See also *Dawson v Farm Bureau Mutual Ins Co of Mich*, 293 Mich App 563, 568; 810 NW2d 106 (2011). "An insurance policy is similar to any other contractual agreement, and, thus, the court's role is to determine what the agreement was and effectuate the intent of the parties." *Hunt v Drielick*, 496 Mich 366, 372; 852 NW2d 562 (2014) (quotation marks and citation omitted). Likewise, the general principles of contract interpretation apply to insurance policies. *Royal Prop Group, LLC v Prime Ins Syndicate, Inc*, 267 Mich App 708, 714; 706 NW2d 426 (2005). This Court reads an insurance contract "as a whole, with meaning given to all terms." *Dancey*, 288 Mich App at 8. "Policy language should be given its plain and ordinary meaning," *Wells Fargo Bank, NA v Null*, 304 Mich App 508, 519; 847 NW2d 657 (2014), and "unless a contract provision violates [the] law or one of the traditional defenses to the enforceability of a

contract applies, a court must construe and apply unambiguous contract provisions as written," *Rory*, 473 Mich at 461.

Over the years, we have considered various linguistic formulations of uninsured motorist coverage. Some policies are written broadly and would provide coverage in this setting. For example, in *Dancey*, 288 Mich App at 19, which stated that such coverage required that "the [unidentified] vehicle must hit *or cause an object to hit,* an insured, a covered "auto" or a vehicle an "insured" is occupying"(emphasis added).

Other policies we have examined have been written more narrowly. Some provide that there must be "physical contact" between the vehicles but do not include the phrase "cause an object to hit." In these cases, we have held that both *direct* and *indirect* contact are sufficient to trigger coverage and that contact with a propelled object constitutes indirect contact providing there is a "substantial physical nexus" between the propelled object and the unidentified vehicle.

In *Hill v Citizens Insurance,* 157 Mich App 383, 394; 403 NW2d 147 (1987), we reviewed a broad range of cases and concluded that "the 'physical contact' provision in uninsured motor vehicle coverage may be satisfied even though there is *no direct contact* between the disappearing vehicle and claimant or claimant's vehicle" providing there is a sufficient causal connection between the disappearing vehicle and the striking object.

This was also the basis for our ruling in *Berry v State Farm Mut Auto Ins Co*, 219 Mich App 340, 347; 556 NW2d 207 (1996). The policy in *Berry* required "physical contact," which, as noted, we interpreted as providing coverage where there was *either* direct or indirect contact:

> [T]his Court has construed the physical contact requirement broadly to include *indirect physical contact*, such as where a rock is thrown or an object is cast off by the hit-and-run vehicle, *as long as a substantial physical nexus between the disappearing vehicle and the object cast off or struck is established by the proofs*. [Emphasis added; citation omitted.]

Our focus on the presence of a "substantial physical nexus" continued in *Wills v State Farm Ins Co*, 222 Mich App 110, 115; 564 NW2d 488 (1997). There, we stated that "indirect physical contact" involves situations when an object is "cast off" by a vehicle:

> An uninsured motorist policy's requirement of "physical contact" between a hit-and-run vehicle and the insured or the insured's vehicle is enforceable in Michigan. This Court has construed the physical contact requirement broadly to include indirect physical contact as long as a substantial physical nexus exists between the unidentified vehicle and the object cast off by that vehicle or the object that strikes the insured's vehicle.
>
> A "substantial physical nexus" between the unidentified vehicle and the object causing the injury to the insured has been found where the object in question was a *piece* of, or *projected* by, the unidentified vehicle, but not where the object originates from an occupant of an unidentified vehicle. [Citations omitted.]

We agree with plaintiff that a policy so drafted, would provide for coverage under the facts alleged in this case.

However, the policy language in this case is different than the language considered in those cases. Defendant's uninsured motorist provision is written more narrowly, providing for coverage only where the unidentified vehicle makes "direct contact" with the insured or her vehicle. It does not refer to propelled objects as in *Wills* nor does it use the unmodified term "physical contact" thereby implicating the "substantial physical nexus" test. By instead requiring "*direct* contact" with the unidentified vehicle, the policy limits uninsured motorist coverage to cases where the unidentified vehicle itself strikes an insured person or vehicle. That requirement is not met here.

The fundamental difference between "physical contact" and "direct physical contact" for purposes of uninsured motorist coverage[2] was defined by this Court in *Hill* nearly 30 years ago. And in this case, the vehicles did not make direct contact. There was contact between the plaintiff's vehicle and an object projected from or propelled by the unidentified vehicle which, under the language of defendant's policy, does not trigger uninsured motorist coverage.

IV. CONCLUSION

The subject policy provides uninsured motorist coverage where there is "direct physical contact," between "the hit and run vehicle" and "(1) **you** or a **resident relative**, or (2) a **motor vehicle** which an **insured person** is **occupying**." (bold emphasis in original). The direct physical contact requirement is not met where the plaintiff's vehicle was struck by something propelled by or cast off from the other vehicle and not by the vehicle itself. Therefore, the trial court erred in denying defendant's motion to dismiss. Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction. Defendant, being the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Kurtis T. Wilder
/s/ Douglas B. Shapiro
/s/ Amy Ronayne Krause

---

[2] Our analysis of the meaning of these terms applies only to uninsured motorist coverage provisions as these are not governed by the No-Fault Act. We do not intend to address in, or control by, this analysis the use or meaning of such terms elsewhere in a No-Fault policy that are governed by statute.