*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LEONID ROZENBERG,

        Plaintiff-Appellee,

v

AUTO CLUB GROUP INSURANCE COMPANY,

        Defendant-Appellant.

UNPUBLISHED
December 29, 2020

No. 348773
Macomb Circuit Court
LC No. 2017-004268-NF

Before: GADOLA, P.J., and RONAYNE KRAUSE and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the trial court's order denying defendant's motion for summary disposition. On appeal, defendant argues plaintiff is not entitled to uninsured motorist (UM) benefits because there was no "direct physical contact" between plaintiff's vehicle and the uninsured motor vehicle, as required by the language of the applicable insurance policy. We reverse.

## I. BACKGROUND

This case arises out of a motor vehicle accident that occurred while plaintiff was driving eastbound on M-59. Plaintiff stated he was traveling approximately 30 feet behind a truck, "and from under the truck, there was some kind of metallic item that . . . flew from under the truck." Plaintiff believed the item was a "side metallic step" that dislodged from the side of the truck. After the item detached, the truck "started getting wobbly, but it didn't stop." The metallic object struck plaintiff's vehicle, which caused the rear tire to "blow up" and his vehicle to roll over and strike a median. At no time did plaintiff's vehicle physically touch the truck; other than, perhaps, the metallic object. Plaintiff was injured in the crash.

---

[1] *Rozenburg v Auto Club Ins Co*, unpublished order of the Court of Appeals, entered August, 30, 2019 (Docket No. 348773).

Plaintiff's insurance policy with defendant provides coverage for uninsured motorist (UM) claims. The policy defines an "uninsured motor vehicle," in relevant part, as:

a hit-and-run motor vehicle of which the operator and owner are unknown and which makes direct physical contact with

(1) you or a resident relative, or

(2) a motor vehicle which an insured person is occupying[.]

It is undisputed that the truck drove away, and neither its owner nor operator are known. Plaintiff commenced the instant action after defendant refused to pay him UM benefits. Defendant filed a motion for summary disposition under MCR 2.116(C)(8) and (C)(10), arguing that no "direct physical contact" occurred between plaintiff's vehicle and the uninsured vehicle, so the policy's preconditions to payment of UM benefits were not met. Plaintiff argued that because the metallic object had been part of the hit-and-run truck, there was direct physical contact between his vehicle and the truck. The trial court denied summary disposition, concluding that there was a question of material fact whether the metallic object had been a detached part of the truck, rather than a third object thrown from or by the truck. Defendant concedes that, for purposes of resolving the instant appeal, we may presume the object was, in fact, part of the truck. Defendant argues that the genesis of the object is, however, legally irrelevant.

## II. STANDARD OF REVIEW

A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Defendant moved for summary disposition under MCR 2.116(C)(8) and (C)(10). The trial court did not specify which subrule it relied upon in denying summary disposition, but because it considered evidence outside the pleadings, we consider the motion as having been denied under MCR 2.116(C)(10). *Outdoor Systems Advertising v Korth*, 238 Mich App 664, 666 n 2; 607 NW2d 729 (1999). When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact. *Maiden*, 461 Mich at 120. This Court also reviews de novo the interpretation or effect of a contractual provision; and in so doing, "we give the words used in the contract their plain and ordinary meaning that would be apparent to a reader of the instrument." *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

## III. ANALYSIS

As the trial court observed, our Supreme Court has held:

Uninsured motorist insurance permits an injured motorist to obtain coverage from his or her own insurance company to the extent that a third-party claim would be permitted against the uninsured at-fault driver. Uninsured motorist coverage is optional—it is not compulsory coverage mandated by the no-fault act. Accordingly, the rights and limitations of such coverage are purely contractual and

-2-

are construed without reference to the no-fault act. [*Rory*, 473 Mich at 465-466 (footnote citations omitted).]

"The rules of contract interpretation apply to the interpretation of insurance contracts." *McGrath v Allstate Ins Co*, 290 Mich App 434, 439; 802 NW2d 619 (2010). If a contract provides definitions for any of its terms, we must apply those definitions; otherwise the words in a contract are accorded their commonly used meanings. *Cavalier Mfg Co v Employers Ins of Wausau (On Remand)*, 222 Mich App 89, 94; 564 NW2d 68 (1997). "Courts may consult dictionary definitions to ascertain the plain and ordinary meaning of terms undefined in an agreement." *Holland v Trinity Health Care Corp*, 287 Mich App 524, 527-528; 791 NW2d 724 (2010).

As the trial court also recognized, this Court has previously addressed the meaning of identical policy language, albeit under somewhat different factual circumstances. *McJimpson v Auto Club Group Ins Co*, 315 Mich App 353, 355; 889 NW2d 724 (2016). In *McJimpson*, the plaintiff was injured when a piece of sheet metal flew off an unidentified truck and shattered the plaintiff's windshield. *Id*. at 354-355. This Court recounted that some UM insurance policies were very broad and encompassed an unidentified vehicle causing an object to hit the insured's vehicle; and noting that where a policy only required "physical contact," such contact could be direct or indirect. *Id*. at 359; see also *Drouillard v American Alternative Ins Corp*, 504 Mich 919, ___; 929 NW2d 777 (2019). Such unadorned "physical contact" language required a "substantial physical nexus" between the unidentified vehicle and the object, which would provide coverage for an object that flew directly off the unidentified vehicle and into the insured's vehicle. *McJimpson*, 315 Mich App at 359-360. However, policy language requiring "*direct* physical contact" was narrower and limited "to cases in which the unidentified vehicle itself strikes an insured person or vehicle," which did not occur in that case. *Id*. at 361. Consistent with *McJimpson*, this Court has previously described "direct physical contact" as synonymous with "vehicle-to-vehicle contact." *Dancey v Travelers Property Cas Co*, 288 Mich App 1, 19; 792 NW2d 372 (2010).

With one confounding exception, the facts of this case are identical to the facts in *McJimpson*. In both cases, an object departed from the unknown vehicle and promptly impacted the insured's vehicle, causing the insured's injuries. We are constrained to apply identical policy language to functionally-identical facts in an identical manner. The distinction is that, in *McJimpson*, the object that struck the plaintiff's vehicle was apparently a piece of cargo; in contrast, the object in this matter was (for summary disposition purposes) a piece of the truck itself. Consequently, there is a reasonable argument that there *was* vehicle-to-vehicle contact in this case, especially because there was no intervening event between the object disengaging from the truck and striking plaintiff's vehicle.

This distinction is questionable because it implicates philosophical conundrums such as "how much of a vehicle is still a vehicle?" Nevertheless, the requirement of "physical contact" as a prerequisite to payment of benefits after a hit-and-run incident has long been understood as an anti-fraud measure that should, as a consequence, be read with some understanding of basic laws of physics. *Lord v Auto-Owners Ins Co*, 22 Mich App 669, 671-672; 177 NW2d 63 (1970); see also *Hill v Citizens Ins Co of America*, 157 Mich App 383, 393-395; 403 NW2d 147 (1987). There is no readily apparent possibility of fraud here. Furthermore, in a lay sense, there is a significant conceptual distinction between a part of a vehicle and, say, cargo being carried by a vehicle.

Indeed, any physical contact between two vehicles could only be between parts of the vehicles. Thus, direct physical contact with a piece of a vehicle is arguably direct physical contact with the vehicle.

However, in all of the cases we can find involving objects fallen from vehicles *or* involving pieces of vehicles, this Court has ultimately found either *indirect* physical contact or no "physical contact" at all. In *Kersten v Detroit Automobile Inter-Insurance Exchange*, 82 Mich App 459, 462-463, 467-475; 267 NW2d 425 (1978), the insured struck a spinning tire on the highway that was found to have been part of a vehicle before the accident, but this Court held that without evidence of the vehicle from which the tire came, the chain of physical contact was too attenuated to find "physical contact." In *Adams v Zajac*, 110 Mich App 522, 527-529; 313 NW2d 347 (1981), the insured swerved to avoid a tire and rim assembly and crashed, and in contrast to *Kersten*, because there was evidence of the vehicle from which the tire came, this Court found a sufficient physical nexus for *indirect* physical contact. In *Hill*, 157 Mich App at 393-395, this Court found a sufficient physical nexus to establish *indirect* physical contact where a vehicle directly propelled a rock into the insured's vehicle. Some of the preceding cases addressed the "physical contact" requirement found in MCL 257.1112, rather than in an insurance policy, but this Court does not appear to have treated identical language differently. We note that MCL 257.1112 does not appear to have ever had a "*direct* physical contact" requirement.

In *Berry v State Farm Mut Auto Ins Co*, 219 Mich App 340, 350-352; 556 NW2d 207 (1996), the insured struck a piece of metal lying in the road and crashed, and because there was evidence that the object fell off a trailer shortly before the accident, a sufficient physical nexus was found to establish "physical contact." This Court further held that "the presence of a 'continuous and contemporaneously transmitted force' is a significant, but not dispositive, factor to be considered in *indirect* contact cases in determining whether the requisite substantial physical nexus has been established," and such a substantial physical nexus obviated the need for an "integral part" of the other vehicle to touch the insured's vehicle. *Id*. at 351-352. In *Dancey*, 288 Mich App at 19-22, as noted, this Court described "direct physical contact" as "vehicle-to-vehicle contact," and it held that indirect physical contact could be established by inferring that an object came from a vehicle.

Thus, this Court has implicitly always treated a disconnected piece of a vehicle as something "other" than the vehicle itself—in other words, functionally indistinguishable from objects fallen from vehicles. As it observed, "[j]ust as a horseshoe is not a horse, so, too, a tire and rim is not a car. Neither is an abandoned muffler or a broken tailpipe." *Kersten*, 82 Mich App at 469. In a different context, our Supreme Court has observed that "all functioning vehicles must be composed of constituent parts, [so] no single article constitutes 'the vehicle.'" *Frazier v Allstate Ins Co*, 490 Mich 381, 385; 808 NW2d 450 (2011). Consistently, the policy at issue defines a "motor vehicle," in relevant part, as "a land motor vehicle or trailer, requiring vehicle registration," which implicitly refers to a whole, or at least mostly-whole, machine. Unmodified, "physical contact" may be direct *or* indirect. However, "direct physical contact" has been established as requiring two vehicles—as vehicles, rather than in pieces—to touch each other.

Thus, we are constrained to conclude that no "direct physical contact" occurred here, as that term has been defined by binding precedent.

Reversed.

/s/ Michael F. Gadola
/s/ Amy Ronayne Krause
/s/ Colleen A. O'Brien