DANCEY v TRAVELERS PROPERTY CASUALTY COMPANY
OF AMERICA

Docket No. 288615. Submitted November 10, 2009, at Lansing. Decided
April 6, 2010, at 9:00 a.m.

Luann M. Dancey brought an action in the Oakland Circuit Court,
John J. McDonald, J., against Travelers Property Casualty Com-
pany of America, seeking, under a commercial automobile insur-
ance policy issued to Maryland Electric Company, Inc., the em-
ployer of plaintiff's former husband, uninsured motorist (UIM)
benefits for injuries sustained in a single-vehicle accident that
occurred when the vehicle driven by plaintiff struck a ladder lying
in the roadway of I-696 at the interchange of I-696 and I-75 in
Royal Oak. Defendant sought summary disposition on the grounds
that plaintiff was not an "insured" as that term is defined in the
policy for purposes of UIM coverage and that there was no
evidence that the accident was caused by the driver of an unin-
sured motor vehicle. The trial court denied the motion, ruling that
the vehicle driven by plaintiff was covered by the policy and there
was a genuine issue of material fact whether the driver of an
uninsured vehicle caused the accident. Defendant appealed by
leave granted.

The Court of Appeals held:

1. The trial court erred by concluding that the vehicle driven
by plaintiff was a covered automobile, thus making plaintiff an
insured under the UIM endorsement. However, there remain
questions of fact regarding whether plaintiff is a named insured
and whether the policy provided UIM benefits for plaintiff. There-
fore, the trial court reached the right result, albeit for the wrong
reasons, with regard to its denial of the motion for summary
disposition.

2. Defendant's policy provides UIM coverage in two situations:
where there is vehicle-to-vehicle contact (direct physical contact)
and where an unidentified vehicle causes an object to hit the
insured's vehicle (indirect physical contact).

3. Plaintiff presented evidence regarding the location where
the accident occurred that supports an inference that the ladder
must have fallen off another vehicle. A reasonable juror could

conclude from the evidence that the presence of the ladder in the roadway, under the circumstances of this case and in the absence of any other reasonable explanation for the ladder's presence, established a substantial physical nexus between a hit-and-run vehicle and the ladder. The evidence regarding the accident's location created a question of fact with regard to whether a substantial physical nexus exists between the ladder and an unidentified hit-and-run vehicle. This case does not require the Court of Appeals to establish an affirmative link between a particular hit-and-run vehicle and the ladder. Although some degree of speculation is necessary to determine exactly how the ladder arrived at its location, under the unique set of facts in this case, such speculation is permissible.

Affirmed and remanded.

*Mark Granzotto, P.C.* (by *Mark Granzotto*), and *Erlich, Rosen & Bartnick, P.C.* (by *Jeffrey S. Cook*), for plaintiff.

*Plunkett Cooney* (by *Robert G. Kamenec* and *Stanley A. Prokop*) for defendant.

Before: TALBOT, P.J., and O'CONNELL and DAVIS, JJ.

O'CONNELL, J. Defendant, Travelers Property Casualty Company of America (Travelers), appeals by leave granted an August 27, 2008, order of the Oakland Circuit Court denying its motion for summary disposition. For reasons slightly different from those articulated by the trial court, we affirm the denial of the motion for summary disposition and remand this case back to the trial court for further proceedings consistent with this opinion. This appeal is being decided without oral argument pursuant to MCR 7.214(E).

I. OVERVIEW

On November 2, 2004, plaintiff, Luann M. Dancey, was involved in a single-vehicle accident after hitting a

ladder lying in the roadway. In November 2007, plaintiff filed a complaint seeking uninsured motorist (UIM) benefits from defendant under a policy issued to Maryland Electric Company, Inc. (Maryland Electric). Defendant moved for summary disposition on two grounds: (1) plaintiff was not an "insured" as that term is defined by the policy for purposes of UIM coverage, and (2) there was no evidence that the accident in question was caused by the driver of an "uninsured motor vehicle." The trial court denied defendant's motion, ruling that the vehicle that plaintiff was driving at the time of the accident, a 2004 GMC Envoy, was covered by the policy and that there was at least a genuine issue of fact whether the driver of an uninsured vehicle caused the accident.

On appeal, defendant argues that an "insured" for purposes of UIM coverage is limited to anyone occupying a vehicle owned by Maryland Electric. Because Maryland Electric did not own or lease the Envoy, plaintiff was not entitled to coverage. Defendant also argues that based upon caselaw and the lower court record, no evidence exists that this accident was caused by the driver of an "uninsured motor vehicle."

We agree with the trial court that there exists a question of fact regarding whether this accident was caused by the driver of an "uninsured motor vehicle." However, while we disagree with the trial court that plaintiff has "conclusively" established that plaintiff is a named insured, we conclude that there exists a question of fact whether plaintiff is a named insured as that term is defined in defendant's policy. Therefore, for slightly different reasons, we affirm the decision of the trial court. We remand this case back to the trial court for further proceedings consistent with this opinion.

## II. FACTS

### A. THE INSURANCE POLICY

Plaintiff is the former wife of David Dancey; the couple divorced in August 2007. David was employed by Maryland Electric, a company that was owned by his parents and a third person. Defendant had issued a commercial automobile policy to Maryland Electric covering the 2004 calendar year.

The policy at issue covers eight private passenger vehicles and 48 trucks, but they are not individually identified by year, make, or model. Rather, covered vehicles are identified by a symbol corresponding to the type of coverage available. Specifically, "[t]he symbols entered next to a coverage on the Declarations designate the only 'autos' that are covered 'autos.' " The policy also contains a UIM endorsement, which provides, in part:

> We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

Plaintiff had previously owned a GMC Yukon. In January 2004, David leased a 2004 GMC Envoy from the Pat Moran Oldsmobile dealership (the dealership) as a replacement vehicle for the Yukon. Plaintiff notified her insurance agent that the Yukon was being replaced with the Envoy. The lease that David signed with the dealership indicates that the Envoy was covered under defendant's policy. Plaintiff testified that Maryland Electric indirectly purchased vehicles for certain employees by giving them a monthly car allowance and that the employees, as well as their spouses, were covered under the

company's insurance policy with defendant. She further testified that she was required to sign a written lease agreement with Maryland Electric under which the Envoy, which was titled in plaintiff's name, was leased to Maryland Electric, thereby bringing the car and herself under the umbrella of defendant's insurance policy. Plaintiff also produced a certificate of insurance that named both herself and Maryland Electric as insured parties under the policy issued by defendant. Plaintiff testified that "she was actually a named insured" because the certificate of insurance for the Envoy identified plaintiff as an insured.

After the trial court denied defendant's motion for summary disposition, and before this Court granted leave to appeal, the trial court allowed the parties to reopen discovery. The parties took the deposition of plaintiff's insurance agent, Rodney Grawel, who is the general manager of Valenti Trobec Chandler, the insurance agency that sold the policy to Maryland Electric. Grawel testified that Maryland Electric had insured plaintiff's Envoy under a policy that it had with Travelers. Grawel testified that in January 2004, he processed a change request with Travelers to remove the Yukon from the policy, add the Envoy to the policy, and add plaintiff as a named insured to the policy. He also testified that as part of the process of incorporating the Envoy into the insurance policy, Maryland Electric would have to acquire an insurable interest in the vehicle, which would be accomplished when plaintiff signed a leaseback agreement for the Envoy with Maryland Electric. No leaseback agreement between Maryland Electric and plaintiff was produced at the hearing on the motion for summary disposition.[1]

---

[1] We make no determination whether such a leaseback agreement exists and leave that decision to the fact-finder.

### B. THE ACCIDENT

On November 2, 2004, plaintiff was driving the Envoy when she was involved in an accident at the interchange of I-696 and I-75 in Royal Oak. She entered eastbound I-696 at or near I-75 and gradually moved toward the far left of the four lanes. In this area I-696 rises far above I-75, and noise mitigation and retaining walls line the roadway on either side of the interchange. It is not an area that pedestrians or other nonvehicular traffic can enter. Access to the overpass, in essence, is limited to motor vehicles.

When plaintiff was in the center left lane or the far left lane, she noticed a "huge steel construction ladder partially opened" angled across the entire lane. Plaintiff had not seen it earlier because her view was obstructed by another vehicle. Plaintiff "had a split second to make a decision do I try to run over or do I swerve." She opted to try to avoid the ladder and pulled sharply to the right, but was unable to avoid the ladder completely. Plaintiff lost control of the car, the "front left tire blew," and the car rolled over. The area where the accident occurred was not under construction and none of the evidence presented suggests how long the ladder had been in the road, how it came to be there, or who was responsible for leaving it there.

Plaintiff argues that because she is a named insured under defendant's policy and her vehicle is leased to Maryland Electric, both the vehicle and plaintiff are covered under the policy. Furthermore, she contends, because the ladder fell from another vehicle that could not be identified, this accident is covered under the UIM endorsement to the policy.

### III. ANALYSIS

As we have previously stated, defendant moved for summary disposition on two grounds: (1) plaintiff was

not an "insured" as that term is defined by the policy for purposes of UIM coverage,[2] and (2) there was no evidence that the accident was caused by the driver of an "uninsured motor vehicle." The trial court denied defendant's motion on both grounds, ruling that the Envoy was covered by the policy and that there was at least a genuine issue of fact concerning whether the accident was caused by the driver of an uninsured vehicle.

### A. STANDARDS OF REVIEW AND BASIC PRINCIPLES OF INSURANCE CONTRACT INTERPRETATION

We review the trial court's ruling on a motion for summary disposition de novo. *Gillie v Genesee Co Treasurer*, 277 Mich App 333, 344; 745 NW2d 137 (2007). The construction and interpretation of an insurance policy and whether the policy language is ambiguous are questions of law, which we also review de novo on appeal. *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 353; 596 NW2d 190 (1999).

"Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). When reviewing a motion under MCR 2.116(C)(10), we consider the pleadings, admissions, affidavits, and other relevant record evidence in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial. *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004).

---

[2] In particular, defendant argued that an "insured," for purposes of UIM coverage, was limited to anyone occupying a vehicle owned by Maryland Electric. Because Maryland Electric did not own or lease the Envoy, plaintiff was not entitled to coverage.

"A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West*, 469 Mich at 183.

"An insurance policy is much the same as any other contract. It is an agreement between the parties in which a court will determine what the agreement was and effectuate the intent of the parties." *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 566; 489 NW2d 431 (1992). "The policy application, declarations page of [the] policy, and the policy itself construed together constitute the contract." *Royal Prop Group, LLC v Prime Ins Syndicate, Inc*, 267 Mich App 708, 715; 706 NW2d 426 (2005). An insurance contract should be read as a whole, with meaning given to all terms. *Id*. A clear and unambiguous contractual provision is to be enforced as written. *Coates v Bastian Bros, Inc*, 276 Mich App 498, 503; 741 NW2d 539 (2007). "Clear and unambiguous language may not be rewritten under the guise of interpretation," *South Macomb Disposal Auth v American Ins Co (On Remand)*, 225 Mich App 635, 653; 572 NW2d 686 (1997), and "[c]ourts must be careful not to read an ambiguity into a policy where none exists," *Auto-Owners Ins Co v Harvey*, 219 Mich App 466, 469; 556 NW2d 517 (1996). A contract is ambiguous when two provisions "irreconcilably conflict with each other," *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 467; 663 NW2d 447 (2003), or "when [a term] is *equally* susceptible to more than a single meaning," *Lansing Mayor v Pub Service Comm*, 470 Mich 154, 166; 680 NW2d 840 (2004) (emphasis in original). "However, if a contract, even an inartfully worded or clumsily arranged contract, fairly admits of but one interpretation, it may not be said to be ambiguous or fatally unclear." *Mich Twp Participating Plan v Pavolich*, 232 Mich App 378, 382; 591 NW2d 325 (1998).

### B. WHETHER PLAINTIFF IS AN INSURED

The UIM endorsement obligates defendant to pay those sums that an "insured" is entitled to recover from the owner or driver of an uninsured vehicle. Although the Business Auto Coverage Form defines the term "insured," that definition is modified for purposes of the UIM endorsement. If the named insured identified in the declarations is a company or some other organization, i.e., not an individual, an "insured" is defined, in pertinent part, as follows:

> Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

For purposes of UIM coverage, a covered "auto"[3] is identified by the symbol "2," which is described in the Business Auto Coverage Form as follows:

> OWNED "AUTOS" ONLY. Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins.

The term "you," as defined in the policy, refers to "the Named Insured shown in the Declarations." Thus, an "insured" for purposes of UIM coverage is a person who is occupying an auto owed by the named insured, i.e., Maryland Electric.

Defendant claims that because the Envoy occupied by plaintiff was owned by the dealership and leased to plaintiff's then-husband David, it was not owned by the named insured and was not covered by the UIM en-

---

[3] The term "auto" refers to a motor vehicle. There is no dispute that the Envoy is an "auto."

dorsement. Because plaintiff was not occupying a covered auto, she was not an insured for purposes of receiving UIM benefits.

Plaintiff did not specifically dispute defendant's reading of the relevant policy terms. Rather, she noted that the policy included an endorsement for leased vehicles, that there existed a leaseback agreement, a certificate of insurance naming her as a named insured, and a policy change request that added the Envoy to the policy and named her as an additional insured. Therefore, plaintiff claimed, she qualified as an insured for the purpose of entitlement to UIM benefits. The crux of plaintiff's argument was that despite what the policy said, "she was actually a named insured" on the policy because her insurance agent had added both her and the Envoy to the policy.

At oral argument on the motion for summary disposition, defendant asserted that there was caselaw indicating that the insurance certificate was not controlling and submitted copies of the relevant cases to the court. Plaintiff responded that defendant had already paid her benefits under the policy and if defendant paid benefits, she must be an insured. The trial court ruled, in pertinent part, as follows:

> The Court finds that the Envoy is a covered vehicle under the policy. Under the policy, Maryland Electric is listed as the insured and the vehicle listed is the Envoy at issue, Plaintiff's Exhibit D.[4] Under section B-2 of the policy, an insured includes anyone occupying a covered auto.
>
> Here, Plaintiff was occupying a covered auto. Further, on the certificate of insurance issued by the State of

---

[4] The exhibit referenced consisted of various pages of the policy. As previously noted, the policy did not describe any of the covered vehicles by year, make, or model, and the pages submitted by plaintiff do not do so either. They certainly do not refer specifically to the Envoy. In this regard, we find that a question of fact exists regarding whether the Envoy is listed as one of the eight private passenger vehicles covered by the policy.

Michigan for the Envoy at issue, the insureds are listed as Maryland Electric Company and Luann Dancey, Plaintiff.

Now, counsel, you did provide me with two cases that say that an insurance certificate is not an insurance policy, but then you also bring up the fact that they're covering her now under no fault.

[*Defense counsel*]: Your Honor, I don't admit that. I don't admit that. He brought that up today, and there's no — I just — I can't admit it on the record. I —

*The Court*: (Interposing) Okay. All right.

We conclude that the trial court erred by conclusively finding that the Envoy was a covered auto, thus making plaintiff an insured under the UIM endorsement. However, we also conclude that the trial court reached the right result with regard to its denial of summary disposition on this point, albeit for the wrong reasons. See *Etefia v Credit Technologies, Inc*, 245 Mich App 466, 470; 628 NW2d 577 (2001). On the basis of the facts of this case as set forth in the lower court record, there remain questions of fact regarding whether plaintiff is a named insured and whether this policy provides UIM benefits for plaintiff.

### C. WHETHER THE ACCIDENT WAS CAUSED BY THE DRIVER OF AN "UNINSURED MOTOR VEHICLE"

UIM benefits are only available if plaintiff was injured in an accident with the driver of an "uninsured motor vehicle" and that driver's liability results from the ownership, maintenance, or use of the "uninsured motor vehicle." An "uninsured motor vehicle" is defined, in part, to include any land motor vehicle, i.e., "auto,"

[t]hat is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit, or cause an object to hit, an "insured", a covered "auto" or a vehicle an

"insured" is "occupying". If there is no direct physical contact with the hit-and-run vehicle, the facts of the "accident" must be corroborated by competent evidence, other than the testimony of any person having a claim under this or any similar insurance as the result of such "accident".

Defendant claims that in order for the hit-and-run vehicle to "cause an object to hit" plaintiff's vehicle, there must be a physical nexus between the hit-and-run vehicle and the object. Defendant argues that because no one could affirmatively state that the ladder fell off another vehicle, only speculation would permit a jury to conclude that there was any nexus between the ladder and the hit-and-run vehicle, and speculation is insufficient to establish a genuine issue of fact. Plaintiff argues that there was no other logical explanation for how the ladder came to be in the roadway, given that the area was not under construction, was not open to pedestrian traffic, and was not beneath an overpass from which a ladder could have fallen. Further, the language used in defendant's policy differs from that involved in the various cases cited by defendant. The trial court ruled, in pertinent part, as follows:

Now, as to the uninsured motorist claim, the Court finds that to recover under this endorsement there must be a causal connection, a substantial physical nexus between the hit and run vehicle and Plaintiff's vehicle for Plaintiff to recover.

And proof of a substantial connection with a disappearing vehicle, and in this case Plaintiff alleged that the ladder she hit must have dropped off another vehicle, is required for recovery under the uninsured motorist endorsement.

If there's no direct physical contact with a hit and run vehicle, as in this case, the Plaintiff is required to show a connection between the ladder, the alleged disappearing vehicle, which must be corroborated by competent evidence.

> Here, the Plaintiff has provided evidence whereby a jury could find it more likely than not that the ladder came from a disappearing vehicle, which is sufficient for Plaintiff to maintain her claim for uninsured motorist benefits under her policy.

In several cases, this Court has addressed issues regarding coverage of accidents in which an object was alleged to have come from an unidentified vehicle. In *Kersten v Detroit Auto Inter-Ins Exch*, 82 Mich App 459; 267 NW2d 425 (1978),[5] the plaintiff was driving when she struck "an unidentified truck tire spinning in front of her on the passing lane of the highway . . . ." *Id.* at 463. The policy at issue required that the plaintiff's injuries be caused by the ownership, maintenance, or use of an uninsured motor vehicle and defined an uninsured motor vehicle to include a "hit-run" motor vehicle. *Id.* A "hit-run" vehicle was, in turn, defined as " 'a motor vehicle which causes bodily injury to an insured *arising out of physical contact* of such vehicle with the insured or with a vehicle' " occupied by the insured. *Id.* (emphasis in original). Given that the tire was mounted on a rim, that the tire was spinning, and that "the accident occurred on a limited access highway which was completely fenced on both sides and where pedestrians or nonmotorized vehicles are rarely found," the Court determined that it was not clear error for the trial court to conclude that the tire had recently fallen from a passing vehicle. *Id.* at 467-468. The Court further noted that despite the requirement that there be physical contact between the two vehicles, courts from other jurisdictions had held that indirect contact is sufficient in certain circumstances:

---

[5] Because *Kersten* was issued before November 1, 1990, it is not binding on this Court. MCR 7.215(J)(1).

Recovery is permitted where the evidence discloses a direct causal connection between the hit-and-run vehicle and plaintiff's vehicle and which connection carries through to the plaintiff's vehicle by a continuous and contemporaneously transmitted force from the hit-and-run vehicle. For example, the intermediate vehicle cases [in which the hit-and-run driver strikes a vehicle, which is then propelled into the insured vehicle] are explained because there is evidence of a simultaneous causal connection. Similarly, in the propelled object cases . . . , there is a direct causal connection by means of a continuous and contemporaneously transmitted force. Further, in such cases there is convincing evidence of a hit-and-run vehicle. But where a tire or a trunk or other piece of cargo lying on the highway is struck and, unlike the propelled stone cases, there is no clear testimony but only an inference of a contemporaneous and continuing propulsion of the object from a disappearing hit-and-run vehicle, recovery is denied. The chain of causation is stretched too thin and is too speculative. [*Id.* at 471-472.]

Given that, the Court held that the plaintiff was not entitled to UIM coverage because even though the facts permitted an inference that the tire came from a passing vehicle, they

[did] not show a clearly definable beginning and ending of a contemporaneously occurring chain of events. Nothing links the tire and rim with the hit-and-run vehicle except an inference drawn from the presence of a spinning tire and rim on the road. Both the intermediate vehicle cases and the propelled object cases require clearly definable or objective evidence (rather than inferential evidence) of a link between a disappearing vehicle and plaintiff's vehicle. [*Id.* at 472 (emphasis omitted).]

In *Adams v Zajac*, 110 Mich App 522; 313 NW2d 347 (1981),[6] a truck tire and rim assembly were lying in the

---

[6] Because *Adams* was issued before November 1, 1990, it is also not binding on this Court. MCR 7.215(J)(1).

middle of an expressway. *Id.* at 525. The plaintiff's decedent either struck the tire or swerved to avoid it, lost control of his vehicle, and crashed. *Id.* A motorist driving in front of the decedent, who had successfully swerved to avoid the tire, stated that before coming upon the tire, he saw a flatbed tractor-trailer parked along the freeway where he first observed the tire. *Id.* at 525-526. The tractor-trailer was observed pulling away from the scene where the accident occurred. *Id.* at 526. The plaintiff sought recovery under MCL 257.1112,[7] which requires "physical contact between the unidentified vehicle and a vehicle occupied by the claimant [as] a condition precedent to such action." *Adams*, 110 Mich App at 526. The *Adams* Court distinguished *Kersten* on the ground that MCL 257.1112 did not specifically require "a continuous and contemporaneously transmitted force from the hit-and-run vehicle." *Adams*, 110 Mich App at 528. It then held "that the 'physical contact' takes place when a vehicle or an integral part of it comes into physical contact with another vehicle." *Id.* It did not matter whether the part was "still attached or comes to rest after being detached from the vehicle . . . ," although the Court also admitted that "in the latter case it might present some difficulties . . . in carrying the burden of proof." *Id.* at 528. The Court concluded, "[i]nferential evidence rather than objective evidence is enough to establish a link between a disappearing vehicle and plaintiff's vehicle." *Id.* at 529.

In *Hill v Citizens Ins Co of America*, 157 Mich App 383; 403 NW2d 147 (1987),[8] the plaintiff's decedent was driving on a state highway when a large camper-truck

---

[7] MCL 257.1112 is designed "to provide a remedy to the victim of an unidentified hit-and-run driver." *Adams*, 110 Mich App at 526. Because it is remedial in nature, it is liberally construed. *Id.*

[8] Because *Hill* was issued before November 1, 1990, it is not binding on us. MCR 7.215(J)(1).

passed him going in the opposite direction. *Id.* at 384-385. A rock " 'came through the windshield just as [the] camper passed' " the decedent's vehicle. *Id.* at 384. Plaintiff, the decedent's wife, was also in the car and claimed that the camper had caused the rock to become airborne. *Id.* at 385, The defendant had no evidence to refute this claim. *Id.* The policy in question provided UIM benefits in accidents involving hit-and-run vehicles and included the same physical contact requirement as in *Kersten*. *Id.* The *Hill* Court held that an object propelled by the unidentified vehicle into the insured vehicle is sufficient to satisfy the "physical contact" requirement as long as there is "a substantial physical nexus between the disappearing vehicle and the object cast off or struck." *Id.* at 394. The fact that the rock came through the windshield just as the camper went by was sufficient to establish such a nexus. *Id.*

In *Berry v State Farm Mut Auto Ins Co*, 219 Mich App 340; 556 NW2d 207 (1996), the plaintiff drove over an object that was lying in the road in front of her, causing her to lose control of her vehicle. *Id.* at 343. She had been unable to swerve to avoid the object because a car was passing by in the opposite direction. *Id.* She had not seen any traffic ahead of her. *Id.* However, shortly before the accident, a witness had seen a truck, which was hauling a trailer filled with scrap metal, stopped on the side of the road approximately half a mile from the accident site. *Id.* The trailer was uncovered, with two- to three-foot sides, and a man was standing by the trailer looking at the load. *Id.* The witness then saw a piece of metal in the road at the accident site, which had not been there when the witness had passed by 10 or 15 minutes earlier. *Id.* at 343-344. The accident occurred approximately ten minutes later. *Id.* at 344. The policy in question provided UIM benefits involving hit-and-

run vehicles and required that the hit-and-run vehicle strike the insured or a vehicle occupied by the insured. *Id.* at 342.

The *Berry* Court held that the presence of scrap metal in the trailer "at a time and location that was temporally and spatially proximate to plaintiff's striking a piece of metal in the road" was sufficient to establish "a substantial physical nexus between the hit-and-run vehicle and the object struck by plaintiff . . . ." *Id.* at 350. Further, given the conflict between *Kersten* and *Adams* regarding the necessity of " 'a continuous and contemporaneously transmitted force from the hit-and-run vehicle' " to the insured vehicle, the *Berry* Court held that "the presence of a 'continuous and contemporaneously transmitted force' is a significant, but not dispositive, factor to be considered in indirect contact cases in determining whether the requisite substantial physical nexus has been established." *Id.* at 350-351 (citation omitted). Although there was no such evidence in the *Berry* case, there was testimony providing the "convincing and objective evidence of a hit-and-run vehicle in the absence of a continuous and contemporaneously transmitted force." *Id.* at 351. The witness's testimony "establishe[d] a continuous sequence of events with a clearly definable beginning and ending, resulting in plaintiff's coming into contact with the piece of metal." *Id.*

The distinguishing feature between our case and cases like *Berry*, *Hill*, and *Adams* is that in those cases, there was objective and convincing evidence of another unidentified vehicle that could have been the source of the object that made contact with the insured vehicle. In *Adams*, there was a truck stopped in the same area of the road where the truck tire was located. In *Hill*, there

was a camper-truck passing by at the same moment the rock was sent flying. In *Berry*, the only case that is binding on this Court, there was a truck hauling scrap metal just down the road from the accident site and a piece of scrap metal in the road at the accident site. This case is more like *Kersten*, in that there was an object in the road and circumstantial evidence that it could have come from a vehicle, but no objective evidence of any vehicle in the area that could have been the source of the object.

Plaintiff testified that she did not see the ladder fall off a vehicle. She testified that she saw a vehicle in front of her in the center left lane just before she came upon the ladder, but this vehicle blocked her view of the ladder and thus was not the source of the ladder. Plaintiff also stated that there might have been another vehicle in front of her that changed lanes just before she noticed the ladder. That vehicle did not drop the ladder but successfully avoided it. She recalled someone at the scene mentioning a truck, but she could not say if that person "said that they saw it fall or if it was a truck. I remember everyone said it was a truck but I don't know if anyone specifically saw the truck or not." In other words, people were speculating that the ladder must have come from a truck. None of the witnesses could connect the ladder to any passing vehicle.[9]

---

[9] Panels of this Court have held, in unpublished cases, that absent evidence of an actual vehicle that is the source of the object in the road, a "substantial physical nexus" between the unidentified vehicle and the object struck is not established. See, e.g., *Kerr v Citizens Ins Co of America*, unpublished opinion per curiam of the Court of Appeals, issued January 22, 2008 (Docket No. 273319) (bale of hay in the road, no evidence of any vehicle seen in the area from which it could have fallen); *Girodat v Auto Club Ins Ass'n*, unpublished opinion per curiam of the Court of Appeals, issued March 4, 1997 (Docket No. 194688) (tire lying in

Defendant's policy is somewhat different from those at issue in *Kersten* and *Hill* and from the statute at issue in *Adams*, because rather than requiring direct physical contact between an unidentified vehicle and the insured's vehicle, it provides that coverage is available in two situations: (1) where there is vehicle-to-vehicle contact (direct physical contact); and (2) where the unidentified vehicle causes an object to hit the insured's vehicle (indirect physical contact). It is undisputed that plaintiff's car was not hit by another car. Further, there was no evidence that another vehicle caused the ladder to hit plaintiff's car. Even if the phrase "cause an object to hit" was not limited to instances of a direct and immediate connection between the unidentified vehicle and the object, as in *Hill*, but could be interpreted to include instances of an indirect and intermediate connection between the unidentified vehicle and the object, as in *Berry*, there was still no evidence of another vehicle in the area that was carrying a ladder at or near the time of the accident.

If this were the only evidence presented below, we would reverse the order of the trial court. However, this case is factually distinguishable from the cases cited above. Plaintiff presented evidence of the location of the accident, which supports an inference that the ladder in question must have fallen off another vehicle. This accident occurred at the intersection of I-696 and I-75 in Royal Oak. In the location where the accident occurred, the freeway on which plaintiff was operating her vehicle, I-696, rises high above another freeway, I-75. Exhibit 1 of plaintiff's brief, which we reproduce here, depicts the area as follows:

the road, no evidence of any vehicle seen in the area from which it could have fallen). Because these cases are unpublished, they are not binding on us.

* Accident Site per
Police Report

The accident site is inaccessible to pedestrians and nonvehicular traffic. Other witnesses testified that no construction was taking place in the area at the time of the accident. The trial court concluded that "someone just didn't walk down the expressway . . . carrying a ladder and drop it off," and noted, "I don't think it dropped from an airplane." Upon viewing the aerial photograph of the crash site, it is obvious that this accident occurred on a raised highway in an area that is only accessible to motor vehicles. A reasonable juror could conclude that there is no reasonable explanation for the presence of a ladder in the middle of an overpass

soaring high above Royal Oak and inaccessible to non-vehicular traffic except that the ladder must have fallen off a vehicle. Accordingly, a reasonable juror could conclude that the presence of a ladder in the roadway, under these circumstances and in the absence of any other reasonable explanation for the ladder's presence, established a "substantial physical nexus" between a hit-and-run vehicle and the ladder struck by plaintiff.

Further, *Berry*, which is the only case that is binding on us, does not preclude us from considering the unique location of this accident in determining that a question of fact exists in this case. The *Berry* holding simply discussed a situation in which the Court determined that a "substantial physical nexus" was established by the proofs. See *Berry*, 219 Mich App at 350. This case does not require us to establish an affirmative link between a particular hit-and-run vehicle and the ladder lying in the roadway. And although the evidence does not establish an identifiable vehicle from which the ladder might have fallen, the evidence also permits a reasonable person to eliminate all reasonable sources for the presence of the ladder except one: the ladder fell off a vehicle (such as a work truck). *Berry* does not preclude us from considering whether evidence of an accident's location creates a question of fact with regard to whether a substantial physical nexus exists between the ladder and an unidentified hit-and-run vehicle. Although we find *Kersten*, *Adams*, and *Hill* useful to reflect on when considering the circumstances under which a "substantial physical nexus" can exist, these cases are not binding on us and do not require us to adopt a different outcome.

Although some degree of speculation is necessary to determine exactly how this ladder arrived at its location, we conclude that, under the unique set of facts in

this case, such speculation is permissible. In fact, we believe that such speculation does not surpass the level of speculation permitted by the *Berry* Court when finding that a reasonable juror could conclude that the metal found in the roadway had fallen from a truck that a witness saw in the vicinity of the accident approximately 15 minutes before the accident.

We affirm the denial of the motion for summary disposition and remand this case to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.