# STATE OF MICHIGAN

# COURT OF APPEALS

MICHIGAN BATTERY EQUIPMENT, INC.,

        Plaintiff-Appellant/Cross-Appellee,

v

EMCASCO INSURANCE COMPANY,

        Defendant-Appellee/Cross-
        Appellant.

FOR PUBLICATION
September 15, 2016
9:00 a.m.

No. 326945
Genesee Circuit Court
LC No. 2014-102661-CK

Before: CAVANAGH, P.J., and SAAD and FORT HOOD, JJ.

SAAD, J.

In this insurance coverage dispute, plaintiff, Michigan Battery Equipment, Inc. (Michigan Battery), appeals the trial court's order that granted summary disposition in favor of defendant, EMCASCO Insurance Company (EMC).[1] The trial court granted summary disposition because it held that the loss was caused by wet rot which was a risk not covered, but instead was specifically excluded from coverage under the policy. For the reasons provided below, we affirm.[2]

---

[1] EMC filed a cross-appeal in this case. But on cross-appeal, EMC does not challenge any ruling or action by the trial court. Instead, EMC merely argues that the trial court's ruling should be affirmed. In these circumstances, a cross-appeal is not necessary, even when the appellee is asserting an alternative ground to affirm. See *Middlebrooks v Wayne Co*, 446 Mich 151, 166 n 41; 521 NW2d 774 (1994).

[2] We review a trial court's decision on a motion for summary disposition de novo. *BC Tile & Marble Co, Inc v Multi Bldg Co, Inc*, 288 Mich App 576, 583; 794 NW2d 76 (2010). A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). In deciding a motion under MCR 2.116(C)(10), the trial court considers affidavits, pleadings, depositions, admissions, and any other documentary evidence submitted by the parties in the light most favorable to the nonmoving party. *Id.* "Summary disposition pursuant to MCR 2.116(C)(10) is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *McCoig Materials, LLC v Galui Constr, Inc*, 295 Mich App 684, 693; 818 NW2d 410 (2012). Also, the

BRIEF FACTS AND GENERAL PRINCIPLES REGARDING INSURANCE CONTRACTS

Due to prolonged water infiltration through deteriorated rubber grommets in the roof, the roof trusses of Michigan Battery's warehouse rotted. In January 2014, snow and ice accumulated on the roof, which caused the rotted trusses to split, crack, and fall down a few feet. The question on appeal is whether EMC's insurance policy covers the damage to Michigan Battery's roof. To resolve this dispute, we must examine the terms of the insurance policy and determine whether the damage is excluded from coverage under any exclusion. Insurance policies must be enforced in accordance with their terms. *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 354; 596 NW2d 190 (1999). "The language of insurance contracts should be read as a whole and must be construed to give effect to every word, clause, and phrase." *McGrath v Allstate Ins Co*, 290 Mich App 434, 439; 802 NW2d 619 (2010). "[U]nless a contract provision violates law or one of the traditional defenses to the enforceability of a contract applies, a court must construe and apply unambiguous contract provisions as written." *Rory v Continental Ins Co*, 473 Mich 457, 465; 703 NW2d 23 (2005). To determine the intent of the parties, a court must first ascertain whether the policy provides coverage to the insured. *Hunt v Drielick*, 496 Mich 366, 373; 852 NW2d 562 (2014). Then, it must determine "whether that coverage is negated by an exclusion." *Id*. "While it is the insured's burden to establish that his claim falls within the terms of the policy, the insurer should bear the burden of proving an absence of coverage." *Id*. (quotation marks and citations omitted). Where a contract provision is ambiguous, the contract is construed in favor of the insured. *Henderson*, 460 Mich at 354. However, "[a] court should not create ambiguity in an insurance policy where the terms of the contract are clear and precise." *Id*. Instead, contract terms should be interpreted using their plan and ordinary meanings. *Id*.

II.

ALL-RISK POLICY AND EXCLUSION FOR WET ROT

Michigan Battery insured its property with an "all-risk" policy issued by EMC on its warehouse and attached offices. "Notwithstanding the presence of an 'all-risks' provision in an insurance policy, the loss will not be covered if it comes within any specific exclusion contained in the policy." 10A Couch, Insurance, 3d § 148.68. Here, the policy provides for various exclusions, of which two were the focus of the arguments at the trial court: (1) the exclusion for damage caused by collapse and (2) the exclusion for damage caused by fungus, wet rot, dry rot, and bacteria. Such exclusionary clauses are strictly construed in favor of the insured. *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 567; 489 NW2d 431 (1992). However, "[c]lear and specific exclusions must be given effect," and "coverage under a policy is lost if any exclusion within the policy applies to an insured's particular claims." *Id.*

---

interpretation of an insurance contract and whether an ambiguity exists are questions of law that we review de novo. *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 47; 664 NW2d 776 (2003).

Because the language of the policy is controlling, we turn our attention to the rot exclusion in the policy, which provides in pertinent part:

**B. Exclusions**

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

\* \* \*

**h. "Fungus," Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus," wet or dry rot or bacteria.

But if "fungus," wet or dry rot or bacteria results in a "specified cause of loss," we will pay for the loss or damage caused by that "specified cause of loss."

This exclusion does not apply:

> **1.** When "fungus," wet or dry rot or bacteria results from fire or lightning; or
>
> **2.** To the extent that coverage is provided in the Additional Coverage—Limited Coverage For "Fungus," Wet Rot, Dry Rot And Bacteria with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

As the trial court properly held, the plain language of the above-quoted insurance policy provisions excludes from coverage damage caused by fungus, wet rot, dry rot, and bacteria. However, this exclusion has exceptions: (1) when the fungus, wet rot, dry rot, or bacteria results from fire or lightning; and (2) to the extent that coverage is provided in the "Additional Coverage" provision; and (3) where the fungus, rot, or bacteria "results in a 'specified cause of loss.' " As a result, because there is no question that wet rot caused the damage at issue, we must determine if any of exceptions to the rot exclusion applies.

The first exception does not apply, because there is nothing on the record to show, and the parties do not argue, that the wet rot here was the result from fire or lightning. Indeed, the record shows that the wet rot was caused by water leakage through grommets located in the roof.

Additionally, the second exception related to the rot being covered under the "Additional Coverage" does not apply. Under this "Additional Coverage," damage from fungus, rot, and bacteria is covered where the fungus, rot, or bacteria is the result of (1) "a specified cause of

loss" other than fire or lightning or (2) flood. The term "specified causes of loss" is defined as meaning

> fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

And "water damage" is further defined as

> accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the descried premises and contains water or steam.

Here, there is nothing on the record to establish, and the parties do not argue, that the wet rot in the warehouse was the result of or caused by a specified cause of loss. Likewise, there is nothing in the record to support that the damage was caused by flood. As already noted, the wet rot damage was caused by water intrusion through deteriorated rubber grommets in the roof. Accordingly, because the wet rot was not the result of a "specified cause of loss" and was not the result of flood, the "Additional Coverage" provision simply does not apply.

Similarly, third exception is not implicated. The rot in the trusses resulted in the roof and trusses to fall down a couple feet, which, importantly, is not one of the enumerated specified causes of loss.

Therefore, the wet rot and resulting damage is not covered under the policy because it is excluded under the general exclusion in section B.1.h and none of the exclusion's exceptions applies. In brief, the policy plainly identifies the risks that EMC was willing to, and did contract to cover, and unfortunately for Michigan Battery, wet rot is not one of those risks. Indeed, this risk was specifically excluded from coverage, and had Michigan Battery desired to obtain coverage, it could have purchased a rider for this specific loss. Consequently, because EMC identified wet rot as a particular type of risk that is was unwilling to insure, Michigan Battery cannot recover under the policy. See *Churchman*, 440 Mich at 567 ("It is impossible to hold an insurance company liable for a risk it did not assume."). And because this exclusion specifically precludes coverage, we need not address how any other exclusion or any other "additional coverage" in the policy applies. See *id.* ("[C]overage under a policy is lost if any exclusion within the policy applies to an insured's particular claims."); *Brown v Farm Bureau Gen Ins Co of Mich*, 273 Mich App 658, 661; 730 NW2d 518 (2007).

Accordingly, we affirm the trial court's grant of summary disposition in favor of EMC. EMC, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Henry William Saad
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood

-4-