# STATE OF MICHIGAN

# COURT OF APPEALS

WALTERS BEACH CONDOMINIUM
ASSOCIATION,

Plaintiff-Appellant,

v

HOME-OWNERS INSURANCE COMPANY,

Defendant-Appellee.

UNPUBLISHED
November 16, 2017

No. 335172
Oakland Circuit Court
LC No. 2015-149633-CB

Before: BECKERING, P.J., and O'BRIEN and CAMERON, JJ.

PER CURIAM.

Plaintiff, Walters Beach Condominium Association, appeals as of right the trial court's September 21, 2016 order granting defendant, Home-Owners Insurance Company's, motion for summary disposition pursuant to MCR 2.116(C)(10). We reverse and remand.

## I. FACTUAL BACKGROUND

This case arises from a rain storm that caused water damage to four of plaintiff's condominium units. The storm occurred on August 30, 2013, and some of the unit owners witnessed water enter through various areas around their walkout basement doors, including around the light fixtures, the ceiling, and the door wall. Craig Linderman, owner of one of the units and president of the condominium association, discovered after the storm that his drywall was wet in the basement near the sliding door.

Following the storm, plaintiff made a claim under defendant's Businessowners insurance policy issued to plaintiff for the damage caused by the rain water. Defendant hired Stephen Ternullo & Associates, Inc. (Ternullo), a structural and forensic engineering firm, to conduct an investigation of the damage. Ternullo submitted an investigation report, concluding that the water intrusions into two of the units were "the result of inadequate construction of the exterior finishes of these residences." As to the other two units, the report concluded that the water intrusions were "most likely occurring or have a strong potential to occur" due to inadequate construction. The units all lacked proper flashings and weep holes in the brick veneers needed for proper drainage. Additionally, the limestone sills below the sliding doors and door walls were level or slightly pitched down, and the water was "most likely penetrating the exterior finishes at the limestone sills below the first story sliding doors or door walls." Defendant

-1-

denied plaintiff's insurance claim, citing the Ternullo report and the construction defects exclusion in the insurance policy.

Both parties filed competing motions for summary disposition. The trial court held a hearing on the motions and stated the following:

> [I]n their briefs both parties stipulate to the opinions, analyses, findings and conclusions reported in the [Ternullo report] dated October 25, 2013. The parties further stipulate that [the four] units . . . had defects in their construction. And that those defects consisted of upper level window and doorsills which were not properly pitched away from the structure, and brick veneer which was missing, flashing and weeping holes to move rain water that would normally accumulate away from the interior portions of the structures.
>
> The parties stipulated that the rain water and/or wind-driven rain water penetrated defectively constructed buildings and caused water damage to the interior portions of the premises. As a result, the construction defects [sic]. The parties also stipulated that the actual damage to the premises, being claimed by [plaintiff], was a result of rain water and/or wind-driven rain water being allowed to penetrate the building as a direct result of construction-related defects.

The trial court then restated the prevalent policy provisions, including the relevant exclusions. The trial court held:

> The policy contains an exclusion for defective construction which the parties agreed and stipulated was the cause of the damage in the instant case. As detailed in the [Ternullo] Report. Thus, the claim[ed] loss is subject to the exclusion in the policy for which there is no coverage. Accordingly, defendant's Motion for Summary Disposition, pursuant to MCR 2.116(C)(10) is granted. And plaintiff's complaint is dismissed in its entirety.
>
> The court need not address plaintiff's Motion for Summary Disposition, on the issue of liability, because summary disposition has been granted in favor of [defendant].

The trial court entered an order granting defendant's motion for summary disposition pursuant to MCR 2.116(C)(10).

## II. PRESERVATION AND STANDARD OF REVIEW

Generally, an issue is not preserved unless it was "raised, addressed and decided by the trial court." *Mouzon v Achievable Visions*, 308 Mich App 415, 419; 864 NW2d 606 (2014) (quotation marks and citation omitted). However, we may address an issue that concerns a legal question when the facts necessary for its resolution are present. *Dell v Citizens Ins Co of America*, 312 Mich App 734, 751 n 40; 880 NW2d 280 (2015). The trial court granted defendant's motion for summary disposition on the ground that a construction defect exclusion in the insurance policy barred coverage. Thus, this issue has been preserved on appeal. To the extent that defendant argued below and on appeal that the wear and tear exclusion and latent

defect exclusion bar coverage, these issues were fully briefed below, the facts necessary for their resolution are present, and therefore, we may address these arguments on appeal.

We review de novo a trial court's decision on a motion for summary disposition. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). When considering a motion for summary disposition under MCR 2.116(C)(10), a trial court must view the evidence submitted in the light most favorable to the nonmoving party. *Id*. The interpretation of an insurance contract is a question of law that we review de novo. *Corwin v DaimlerChrysler Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005).

### III. ANALYSIS

Plaintiff argues that the trial court erred when it granted defendant's motion for summary disposition because the interior water damage was a result of a covered loss, and no exclusion in the policy barred coverage for that water damage. We agree that the trial court erred when it granted defendant's motion for summary disposition.

Insurance contracts are generally treated the same as any other contract, but it is incumbent on an insured to show coverage and incumbent on the insurer to show that an exclusion applies. *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377-378; 836 NW2d 257 (2013). Contracts should be enforced in accordance with their terms, giving the contractual words their plain and ordinary meanings. *Reicher v SET Enterprises, Inc*, 283 Mich App 657, 664; 770 NW2d 902 (2009). Further, trial courts must "give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 468; 663 NW2d 447 (2003). "The primary goal in the construction or interpretation of any contract is to honor the intent of the parties." *Stone v Auto-Owners Ins Co*, 307 Mich App 169, 174; 858 NW2d 765 (2014) (citation omitted). "An unambiguous contractual provision reflects the parties['] intent as a matter of law, and '[i]f the language of the contract is unambiguous, we construe and enforce the contract as written.' " *Reicher*, 283 Mich App at 664-665 (citation omitted) (second alteration in original).

The parties agree to the following: (1) the findings and opinions underlying the Ternullo report, (2) that the damage to the buildings was caused by construction defects in the brick veneer and by wind-driven rain that was able to penetrate the brick veneer, and (3) wind-driven rain is a covered loss under the insurance policy. The question turns solely on whether an exclusion under the insurance policy bars coverage based on these undisputed facts. Defendant's Businessowners insurance policy provides the following coverage:

**A. COVERAGE**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

* * *

-3-

**3. Covered Causes of Loss**

RISKS OF DIRECT PHYSICAL LOSS unless the loss is:

a. Excluded in Section B., Exclusions . . . .

At issue are two exclusions under Section B.2 and one exclusion under Section B.3 of the insurance policy:

**B. EXCLUSIONS**

We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

* * *

2. We will not pay for loss or damage caused by or resulting from any of the following:

* * *

**d. Maintenance Types of Loss:**

(1) Wear and tear;

(2) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself.

* * *

3. We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.

* * *

**c. Negligent Work:** Faulty, inadequate or defective:

* * *

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction . . . .

Defendant has the burden of proving the existence of an exclusion, and the issue here turns on which, if any, of the above exclusions apply.

## A. CONSTRUCTION DEFECTS

Plaintiff argues that even though the parties agree that the damage was a result of construction defects, Section B.3.c.(2) includes a "resulting loss" clause that mandates limited coverage for damage caused by a covered loss. We agree.

The pertinent provision states: "We will not pay for loss or damage caused by or resulting from any of the following. *But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.*" Defendant concedes in its brief on appeal that even though construction defects were a cause of the damage to the property, "there would arguably be coverage to repair the areas damaged as a result of a subsequent covered cause of loss." The plain language of this provision requires, as defendant concedes, that damage sustained due to a covered cause of loss, such as wind-driven rain, is covered under the policy even though the damage was also a result of a construction defect. What is not covered under Section B.3.c.(2) is the actual construction defect itself. Therefore, defendant is not responsible for costs associated with repairs to the brick exterior, including the weep holes, flashing, or any other aspect of the building that constitutes a construction defect. Instead, defendant is responsible to cover damage from wind-driven rain, i.e., the interior damage to the property in connection with the August 30, 2013 storm. This is reasonable and consistent with the expectations of the insured.[1] Defendant, however, argues there is no subsequent *covered* cause of loss because two other exclusions apply under the policy and bar coverage. This necessarily requires an analysis of the exclusions for wear and tear and hidden or latent defects. If either of these exclusions apply, there will be no coverage for the water damage. See *Michigan Battery Equip, Inc v Emcasco Ins Co*, 317 Mich App 282, 285; 892 NW2d 456 (2016) ("[C]overage under a policy is lost if any exclusion within the policy applies to an insured's particular claims.") (Citation and quotation marks omitted.)[2]

## B. WEAR AND TEAR

Defendant argues that the water damage to the buildings was caused by normal wear and tear, thereby excluding coverage pursuant to Section B.2.d.(1) of the policy. We disagree.

The parties did not stipulate to the fact that the damage was caused by normal wear and tear. The policy does not define "wear and tear," but its common definition provides: "the loss, injury, or stress to which something is subjected by or in the course of use; *esp*: normal depreciation." Merriam-Webster's Collegiate Dictionary, Eleventh Edition (2014). This phrase is also defined as "[d]eterioration caused by ordinary use" or "the depreciation of property

---

[1] We note that other jurisdictions have reached a similar outcome when analyzing a "resulting loss" clause, more commonly known as an "ensuing loss" clause, in property insurance policies. See, e.g., *Blaine Const Corp v Ins Co of North America*, 171 F3d 343, 349-350; (CA 6, 1999) (applying Tennessee law); *Roberts v State Farm Fire and Cas Co*, 146 Ariz 284, 285-286; 705 P2d 1335 (1985); *Arnold v Cincinnati Ins Co*, 276 Wis 2d 762, 778; 688 NW2d 708 (2004).

[2] Importantly, the exclusions for wear and tear and hidden or latent defects do not contain a similar "resulting loss" clause.

resulting from its reasonable use." Black's Law Dictionary (10th ed). The parties agreed, based on the Ternullo report, that the damage was caused by construction defects and wind-driven rain that allowed water to damage the interior of the buildings. According to the Ternullo report, the damage was a "result of inadequate construction of the exterior finishes." The damage to the interior of the units was a result of wind-driven rain penetrating defective walls and cannot reasonably be construed as normal depreciation of the property or a result from reasonable use. Without any evidence of damage from normal wear and tear, defendant has not proven that Section B.2.d.(1) applies, and summary disposition is not proper under this exclusion.

## C. HIDDEN OR LATENT DEFECTS

Defendant also argues that the damage was a result of hidden or latent defects under Section B.2.d.(2) of the policy. Because there is a genuine issue of material fact as to this issue, reversal is required.

The policy does not define a "hidden or latent defect," but "hidden" is defined as "being out of sight or not readily apparent," and "latent" is defined as "to lie hidden" or "present and capable of becoming though not now visible, obvious, active, or symptomatic." Merriam-Webster's Collegiate Dictionary, Eleventh Edition (2014). These terms modify "defect," which is defined as "an imperfection that impairs worth or utility." *Id*. Plaintiff argues that construing a construction defect as a "hidden or latent defect" under the policy would render a part of the insurance contract as surplusage or nugatory. This argument is without merit. There very well may be instances when a hidden or latent defect also constitutes a construction defect because the construction defect was not readily apparent. Yet, not all construction defects are hidden or latent, and not all hidden or latent defects are due to improper construction.

Here, the inadequate flashing was possibly a hidden or latent defect because flashing is covered by exterior brick and likely could not be seen, after construction, without removing the exterior brick. The Ternullo report, however, explained that "[c]orrectly designed and constructed flashing systems include weep holes to allow any water that has penetrated the brick veneer to drain to the exterior of the veneer before it contacts the house framing or sheathing." Therefore, the lack of weep holes in the brick wall was readily apparent, and a trier of fact could conclude that this defect would have alerted a person to an improper flashing system. Additionally, the improperly installed limestone sills were in plain view as explained and photographed in the Ternullo report. Thus, there is a question of fact as to what, if any, construction defects were hidden or latent under the exclusion and whether only the hidden or latent defects were a cause of the damage. This is an issue to be resolved by the fact-finder, and therefore, summary disposition is not proper as to this exclusion.

As a final point, the policy also excludes "any quality in property that causes it to damage or destroy itself." We find that the defective construction did not inherently contain a quality that causes it to damage or destroy itself. Instead, the defective construction allowed an external

force, i.e., wind-driven rain, to penetrate the exterior wall. Therefore, this exclusion does not apply.[3]

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ Colleen A. O'Brien
/s/ Thomas C. Cameron

---

[3] Defendant also argues that plaintiff is not entitled to recover for the damage to the property because the individual owners already paid for the repairs. The trial court did not reach this issue, and we decline to address it because the record may need further development. *Dell*, 312 Mich App at 751 n 40.