# STATE OF MICHIGAN

# COURT OF APPEALS

JEREMY DROUILLARD,

Plaintiff-Appellee,

v

AMERICAN ALTERNATIVE INSURANCE
CORPORATION,

Defendant-Appellant.

FOR PUBLICATION
February 27, 2018

No. 334977
St. Claire Circuit Court
LC No. 2015-002282-NI

Before: TALBOT, C.J., and METER and TUKEL, JJ.

TUKEL, J. (*concurring*).

I agree that summary disposition must be granted to defendant, and I join the majority opinion. There are two principal legal points at issue: (1) Did the pickup truck hit, or cause an object to hit the ambulance, as required by the policy language; and (2) was the pickup truck a "hit and run vehicle" as required by the policy language in order for there to be coverage. The majority answers the first question in the negative, a conclusion with which I agree, and which is sufficient to mandate summary disposition in favor of defendant. The dissent answers the first question in the affirmative by relying on previous decisions of this Court which have ignored the second question and which merely assumed that the vehicles at issue in those cases were hit-and-run vehicles. I write separately to point out the assumptions which have been and are being built into our jurisprudence for future cases, which I believe merit review at some point by our Supreme Court, even if this case does not present the issue clearly enough to warrant such review.

## I. POLICY LANGUAGE

The policy at issue here required that the pickup truck carrying the drywall "*hit, or cause an object to hit*, an 'insured,' a covered 'auto' or a vehicle an 'insured' is 'occupying.'" (Emphasis added.) Rather than focusing on the critical "hit, or cause an object to hit" language, as does the majority, the dissent focuses on this Court's opinion in *Dancey v Travelers Prop Cas Co*, 288 Mich App 1; 792 NW2d 372 (2010):

The majority states that the *Dancey* Court was focusing on the possibility of a "substantial physical nexus" between the ladder and another vehicle and not on the "cause an object to hit" phrasing from the policy. But implicit in the *Dancey*

-1-

Court's holding was that the situation in *Dancey* satisfied the conditions of the policy. Therefore, *Dancey* provides supportive caselaw for plaintiff's position in the present case.

I respectfully disagree. "A point of law merely assumed in an opinion, not discussed, is not authoritative." *United States v Oleson*, 44 F3d 381, 387 (CA 6, 1995) (NELSON, J., concurring), overruled on other grounds by *United States v Reed*, 77 F3d 139 (CA 6, 1996); see also *Webster v Fall*, 266 US 507, 511; 45 S Ct 148; 69 L Ed 411 (1925); *Othi v Holder*, 734 F3d 259, 265 (CA 4, 2013); *Nelson v Monroe Regional Med Ctr*, 925 F2d 1555, 1576 (CA 7, 1991).[1] Consequently, the dissent's reliance on *Dancey's* "implicit" holding of a point not raised or ruled on, but merely assumed, is misplaced. As the majority opinion properly holds, *Dancey* did not decide, and thus provides no support for, the issue of whether the facts of the present case satisfy the requirement in the policy that "[t]he vehicle must hit, or cause an object to hit" the insured. The majority correctly construes those words, which plainly do not cover the situation here, where the ambulance hit stationary objects that had been dropped by the pickup truck, rather than the objects hitting the ambulance.

## II. WHAT CONSTITUTES A "HIT AND RUN VEHICLE"?

The analysis in *Dancey* has another flaw—it fails to fully consider what is necessary for a vehicle to constitute a "hit-and-run" vehicle, the threshold for coverage in the first instance. Defendant argues that there is no evidence that the driver of the pickup truck knew of an accident and then left the scene, the statutory definition of some hit-and-run offenses. Both the majority and the dissent agree that defendant's reliance on statutory definitions is misplaced; because the term itself is undefined in the policy, statutory definitions have no applicability, and the term must be given its ordinary meaning. See *Citizens Ins Co v Pro-Seal Serv Group, Inc*, 477 Mich 75, 83; 730 NW2d 682 (2007). The majority and dissent also agree that if the term "hit-and-run vehicle" encompasses some requirement that the driver had to have known of the accident, there was sufficient evidence of knowledge here to deny summary disposition on that point. That is so in this case because one fair reading of the record is that the drywall fell off the truck just seconds before the ambulance hit it, as the majority opinion recognizes. Under those circumstances, it is a fair inference that the driver would have felt the shift in weight of the truck, and would have looked up at the rearview mirror and seen the accident or its immediate aftermath. The driver likely would have heard the crash as well. Therefore, there was sufficient evidence in this case to conclude that the truck was a hit and run vehicle, and so coverage was at least possible, which is sufficient to preclude summary disposition as to that issue.

---

[1] The opinions of lower federal courts are not binding on this Court, but such opinions may be considered for their persuasive value. See *Abela v Gen Motors Corp*, 469 Mich 603, 606-607; 677 NW2d 325 (2004).

## A.  HIT AND RUN V. RUN AND HIT

*Dancey* and *Berry v State Farm Mut Auto Ins Co*, 219 Mich App. 340; 556 NW2d 207 (1996), the cases relied upon by the dissent and by plaintiff, however, contain a flaw in the form of an assumption, which is related to the knowledge issue.  The requirement of a "hit-and-run vehicle" requires something basic—that a vehicle "hits" another vehicle and then "runs."  Regardless of whether the phrase "hit-and-run" imposes some requirement of knowledge on the part of the driver, its very phrasing imposes a temporal requirement—the "hit" must precede the "run."  *Dancey* discussed only what constitutes the "hit" portion of the analysis; after finding that satisfied, it did not discuss the "run" component at all.  Thus, under *Dancey*, a vehicle which in some sense starts a chain of events which later causes an accident (thus, according to *Dancey*, satisfying the "hit, or cause an object to hit" language of the policy), is assumed to constitute a "hit-and-run" vehicle.  But that cannot be correct, as the facts of *Dancey* demonstrate.

In *Dancey*, a ladder fell or dropped off a truck some time before the plaintiff's vehicle struck the ladder on the highway.  At least one vehicle in front of the plaintiff's, which had blocked her view, managed to avoid the ladder.  *Dancey*, 288 Mich App at 18.  Witnesses at the scene talked about a truck which may have dropped the ladder, but the plaintiff did not know if anyone had seen a truck.  *Id*.

Thus, even assuming that the "hit" portion of the "hit and run" requirement was met in *Dancey*, there was no evidence that the driver fled or "ran" from an accident, even if the driver knew that the ladder had fallen off.  Unlike in the present case, there was no immediate accident which followed the ladder coming to a stop on the roadway, and when the ladder fell it was not necessarily the case that an accident would ensue.  One vehicle seemed to have avoided the ladder, and the plaintiff almost did as well.  But in any event, all that the evidence showed was that after losing the ladder, the truck continued driving *before* an accident took place.  Even if it could be proven that the driver of whatever vehicle lost the ladder knew that it had fallen off, at most it could be said that the driver had created a high likelihood of an accident by creating a very dangerous situation.  Continuing one's driving under such circumstances, i.e., not stopping, is not flight or leaving the scene of an accident (as no accident has yet occurred) and thus does not fit the ordinary sense of running as used in the term "hit and run vehicle."  By thereby putting the cart before the horse, *Dancey* converted the term "hit-and-run" into a new concept, "run-and-hit," because the later accident had the legal effect of turning the driving which *preceded* the accident into the running.  *Dancey* simply labeled a truck which creates a dangerous condition short of an accident and which continues driving a "hit-and-run vehicle," where it is known with hindsight that an accident did actually occur.  *Dancey* simply ignored or overlooked the fact that there must first be a "hit" and then a "run" in order for a vehicle to become a "hit-and-run" vehicle.  By ignoring the "hit-and-run" requirement, *Dancey* violated the rule that "The language of insurance contracts should be read as a whole and must be construed to give effect to every word, clause, and phrase," *Mich Battery Equip, Inc v Emcasco Ins Co*, 317 Mich App 282, 284; 892 NW2d 456 (2016), by essentially reading the "run" requirement of "hit-and-run" out of the policy.

*Berry*, a case also cited by the dissent, demonstrates this point even more clearly.  In *Berry*, a truck was hauling a load of scrap metal.  At some point it stopped, and the driver got out and inspected the load.  Between five and fifteen minutes later, at a spot about a half-mile from

where the driver had stopped to inspect the truck, a fallen piece of metal caused an accident. *Berry*, 219 Mich App at 350. By that time, the truck had long since driven away. The *Berry* Court examined the facts and determined that "a substantial physical nexus between the hit-and-run vehicle and the object struck by plaintiff was established." *Id*. The *Berry* Court did not discuss at all whether or how the truck had "run" from what it determined was the "hit." Thus, even setting aside whether there was a basis for determining "a substantial physical nexus" between the truck and the plaintiff's vehicle, simply labeling the truck "the hit-and-run" vehicle where it continues driving and is gone from the scene of what later becomes an accident ignores the temporal requirement of a hit followed by a run. It is not hard to imagine a scenario such as in *Berry* in which a sharp piece of metal could lie on a rural road for days undiscovered and then cause an accident. Under those circumstances, labeling someone a "hit-and-run" driver for having driven days before, even if the driver had known about a part falling off, simply strains the term "hit-and-run" beyond a reasonable reading. See *Radenbaugh v Farm Bureau Gen Ins Co of Mich*, 240 Mich App 134, 138; 610 NW2d 272 (2000) (stating that courts should avoid strained construction of insurance policies).[2]

## B. APPLICATION TO CURRENT CASE

In the present case, the policy language, properly construed, solves the problem. Its requirement that a vehicle "hit, or cause an object to hit" an insured vehicle (as opposed to the insured vehicle hitting a stationary object, as in this case) necessarily requires that an accident occur prior to whatever driving by the unidentified vehicle is labeled as running. However, if this Court continues to adopt the *Dancey* and *Berry* assumptions of what constitutes "hit and run" then our Supreme Court will have to address the issue in an appropriate case.

/s/ Jonathan Tukel

---

[2] The temporal requirement of "hit and run" suggests that when this Court does consider whether in order to be labeled a hit-and-run, the driver of a vehicle needed to have been aware of an accident, the answer will be yes. As this analysis has shown, absent a preceding accident there can be no hit and run. For the same reasons, absent knowledge of the accident, driving is simply driving, and only becomes "running" if the driver is running from something, i.e., an accident.