# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v

JOMO THOMAS,

    Defendant-Appellant.

UNPUBLISHED
September 27, 2016

No. 326806
Wayne Circuit Court
LC No. 14-008967-FC

Before: BORRELLO, P.J., and MARKEY and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of first-degree premeditated murder, MCL 750.316(1)(a). He was sentenced to life imprisonment without parole for each conviction. We affirm.

## I. FACTUAL BACKGROUND

Defendant was convicted of murdering his estranged wife, Tocarra Sims, and her boyfriend, Martin Thomas (no relation to defendant), during the evening of January 4, 2014, or the early morning of January 5, 2014. Tocarra's teenage son discovered the bodies when he returned to Tocarra's home on January 5, 2014, after spending the night at his grandmother's house. The victims died from blunt force trauma, and their injuries were consistent with those inflicted by a two-by-four board with protruding nails, which was discovered inside the house.

There were no eyewitnesses to the homicide. At trial, the prosecutor introduced evidence that Tocarra had filed for divorce and obtained a personal protection order ("PPO") against defendant in October 2013. Tocarra's son testified that a few days before the homicide, defendant forcibly entered Tocarra's home, argued with her, and threatened her. Defendant's cell phone records indicated that his phone traveled to the area of Tocarra's home and returned to the area of the house where defendant was living with his girlfriend during the early morning hours of January 5, 2014. Likewise, a vehicle matching the description of a Grand Marquis owned by defendant's girlfriend was captured on a surveillance video recorded by a business near Tocarra's house on the night of the offense. The prosecution also introduced evidence that defendant assaulted a prior domestic partner, Cassandra Arnold, by beating her with an aluminum baseball bat in 2008.

-1-

Gary Lewis, who regularly conversed with defendant while they were incarcerated in the Wayne County Jail, testified that defendant confessed that he had killed his wife and her boyfriend by beating them with a statue. During his testimony, he recounted several details of the murder that he learned from his conversations with defendant, which were consistent with other evidence admitted at trial.

## II. EVIDENTIARY CLAIMS

Defendant first argues that the trial court improperly allowed the prosecutor to introduce other act and hearsay evidence in violation of MRE 404(b) and MRE 802. We reject defendant's claims.

### A. STANDARD OF REVIEW

Defendant preserved most of his evidentiary challenges with a timely objection at trial. However, because he did not object to Lewis' testimony referencing defendant's prior assault charges, his claim regarding that testimony is unpreserved. See MRE 103(a)(1); *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001).

We "review[] for an abuse of discretion the trial court's decision to admit or exclude evidence." *People v Lane*, 308 Mich App 38, 51; 862 NW2d 446 (2014). "[A] trial court abuses its discretion when its decision falls outside the range of principled outcomes or when it erroneously interprets or applies the law." *Id*. (footnotes omitted). However, "[w]e review de novo the preliminary questions of law surrounding the admission of evidence, such as whether a rule of evidence bars admitting it." *Id*.

Unpreserved claims of evidentiary error are reviewed for plain error affecting substantial rights. *People v Bulmer*, 256 Mich App 33, 35; 662 NW2d 117 (2003), citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). A defendant must show that (1) an error occurred, (2) the error was clear or obvious, and (3) "the plain error affected [the defendant's] substantial rights," which "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Carines*, 460 Mich at 763. Even if a defendant establishes a plain error that affected his substantial rights, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763 (quotation marks and citation omitted; second alteration in original).

### B. APPLICABLE LAW

Evidence of a defendant's "other crimes, wrongs, or acts" is generally inadmissible to demonstrate the defendant's propensity to act in conformity with those acts. MRE 404(b)(1); *People v Starr*, 457 Mich 490, 494; 577 NW2d 673 (1998). However, other acts evidence may be admissible under MRE 404(b) for other, noncharacter purposes, such as to establish "proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material[.]" MRE 404(b)(1); see also *Starr*, 457 Mich at 495-496. MRE 404(b) is "a rule of inclusion," and the list of proper, noncharacter purposes under the rule is nonexclusive. *Starr*, 457 Mich at 496.

In sum, evidence regarding a defendant's prior crimes, wrongs, or acts is admissible under MRE 404(b) if (1) it is offered for a proper, noncharacter purpose, (2) it is relevant to a factual issue of consequence at trial, and (3) the probative value of the evidence is not substantially outweighed by the potential for unfair prejudice under MRE 403. *People v Sabin (After Remand)*, 463 Mich 43, 55-56; 614 NW2d 888 (2000), citing MRE 104(b), MRE 402, MRE 403, MRE 404(b), and *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). In addition, upon the admission of other acts evidence, "the trial court, upon request, may provide a limiting instruction under MRE 105." *Sabin*, 463 Mich at 56.

## C. 2008 ASSAULT AGAINST CASSANDRA ARNOLD

Defendant contends that the prosecution did not justify the admission of evidence concerning his 2008 assault against Cassandra Arnold by demonstrating that the evidence was relevant to a proper nonpropensity purpose under MRE 404(b)(1). In raising this claim, defendant fails to recognize that the trial court admitted this evidence after the parties disputed whether the evidence was admissible under either MCL 768.27b and MRE 404(b). Because the evidence was, in fact, admissible under MRE 768.27b, we reject defendant's MRE 404(b) claim.[1]

MCL 768.27b(1) provides:

Except as provided in subsection (4), in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other acts of domestic violence is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.

The statute's definition of "domestic violence" includes acts "[c]ausing or attempting to cause physical or mental harm to a family or household member." MCL 768.27b(5)(a)(*i*). The term "family or household member" includes "[a]n individual with whom the person has or has had a child in common." MCL 768.27b(5)(b)(*iii*).

"Evidence is relevant if it has any tendency to make the existence of a fact that is of consequence to the action more probable or less probable than it would be without the evidence." *Aldrich*, 246 Mich App at 114, citing MRE 401. "Under this broad definition, evidence is admissible if it is helpful in throwing light on any material point." *Aldrich*, 246 Mich App at 114. Notably, unlike MRE 404(b)(1), which precludes the admission of other acts evidence for the purpose of proving a defendant's propensity to engage in the charged conduct, MCL 768.27b(1) permits the admission of evidence "for any purpose for which it is relevant," subject only to exclusion under MRE 403. Thus, MCL 769.27b(1) permits the introduction of prior bad acts of domestic violence to prove propensity for such conduct, *People v Railer*, 288 Mich App

---

[1] Likewise, for this reason, it is not necessary to consider defendant's arguments with regard to MRE 404(b).

213, 219-220; 792 NW2d 776 (2010), "because a full and complete picture of a defendant's history tends to shed light on the likelihood that a given crime was committed," *People v Cameron*, 291 Mich App 599, 610; 806 NW2d 371 (2011) (quotation marks and citation omitted).

Defendant's 2008 assault against Arnold, the mother of two of defendant's children, was admissible under MCL 768.27b(1) because it was highly relevant to defendant's propensity to violently assault former domestic partners. Although defendant argues that the incident did not share a "special quality" with the double homicide for purposes of proving his identity as the perpetrator of the murders, MCL 768.27b only requires that the evidence be relevant. Relevance in this context does not require proof of a common "special quality." See MRE 401; *Aldrich*, 246 Mich App at 114.

The circumstances surrounding Tocarra's and Thomas' murders suggest that the perpetrator acted in a violent and frenzied rage. There was no evidence of a prosaic motive for these crimes, such as theft, as nothing of value was taken from the home. The victims were beaten repeatedly with a blunt object, and the brutality of the assault suggests that the perpetrator was motivated by powerful emotions. The victims' nudity further indicates that this was a crime of passion. There was no evidence suggesting that Tocarra or Thomas had any other enemies who would want to hurt or kill them, and defendant was the only known person in their lives who harbored hatred, possessiveness, or jealousy toward them. Evidence that defendant previously exhibited rage against a former domestic partner by violently beating her with a bat made it more probable that he had the capacity and motivation to commit the violent offenses against Tocarra and Thomas. See MRE 401; *Aldrich*, 246 Mich App at 114.

Moreover, the probative value of this evidence was not substantially outweighed by its prejudicial effect. "The 'unfair prejudice' language of MRE 403 refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *Cameron*, 291 Mich App at 611 (quotation marks and citations omitted). During her testimony, Arnold merely stated the basic facts of the assault. Her statements were not presented in a sensationalized or dramatic manner that was likely to inflame the jurors' passions—and cause the jurors to attribute undue weight to the evidence—or inject considerations separate from the merits of the case. Additionally, the presentation of Arnold's testimony after the jury already had heard all of the evidence related to the charged homicides avoided any danger that the jury would be inclined to believe that defendant was guilty before the facts of the homicides were revealed. These circumstances mitigated the potential prejudicial effect of the evidence in relation to its significant probative value.

Thus, the trial court did not abuse its discretion when it admitted evidence regarding the assault under MCL 768.27b.

## D. DECEMBER 31, 2013 ARGUMENT

Defendant also argues that evidence of his argument with Tocarra on December 31, 2013, was inadmissible under MRE 404(b)(1). Again, we disagree.

The argument between Tocarra and defendant, and the specific threats that defendant made during the argument, were relevant to defendant's motive and intent, which are recognized purposes for admitting evidence under MRE 404(b)(1). *Starr*, 457 Mich at 495-496. The threats made the existence of defendant's motive and intent to harm Tocarra—given his hostility toward her shortly before the commission of the offense—more probable than it would have been without the evidence. See *Aldrich*, 246 Mich App at 114. "Although motive is not an essential element of the crime, evidence of motive in a prosecution for murder is always relevant." *People v Unger*, 278 Mich App 210, 223; 749 NW2d 272 (2008). See also *People v Hoffman*, 225 Mich App 103, 109-110; 570 NW2d 146 (1997) (concluding that evidence of the defendant's hatred of women and previous acts arising from that hostility were "relevant and material to [the] defendant's motive for his unprovoked, cruel, and sexually demeaning attack on his victim").

Defendant contends that the verbal altercation was not relevant to motive because the December 31 incident was nonviolent and therefore dissimilar to the homicides. However, prior acts offered to prove motive do not require the same degree of similarity as when prior acts are offered to prove a common pattern or scheme of conduct. See *Sabin*, 463 Mich at 63-68; *People v Watson*, 245 Mich App 572, 574-579; 629 NW2d 411 (2001) (holding that the defendant's nude photograph of the victim was admissible to prove the defendant's motive, notwithstanding the fact that the acts of taking and possessing a nude photograph are different in character from the physical contact and sexual penetration involved in a charge of first-degree criminal sexual conduct). Here, defendant demonstrated a motive to kill Tocarra when he angrily confronted her, after kicking in the side door of her house, and threatened to harm her if she reported his conduct to his probation agent. The fact that defendant did not physically harm Tocarra during this altercation does not detract from the relevance of his nonphysical conduct in demonstrating his motivation to harm her.

We also note that defendant's conduct in forcefully entering Tocarra's house through the side door during the December 31 argument was relevant to show that he knew that the side door was a viable means of entry to the home. Defendant argues that this fact was not relevant because there was no evidence that the perpetrator entered the house through the side door and because others, including witnesses, also knew about the side door. However, Sergeant Kevin Wight testified that he observed footprints in the snow leading to and from the side door, but not the front door.

The trial court did not abuse its discretion in admitting the evidence of defendant's December 31 argument with Tocarra.

### E. OCTOBER 2013 PROBATION VIOLATION

Defendant also challenges the admissibility of testimony by his probation officer, Jamal Womble, regarding the probation violation that he issued against defendant in October 2013. He argues that this testimony was inadmissible prior-bad-act evidence under MRE 404(b)(1) and inadmissible hearsay. We disagree.

Womble testified that after speaking with Tocarra in October 2013, he issued a warrant for a violation of probation against defendant on the basis of his threatening and intimidating behavior toward Tocarra. However, Womble did not testify that defendant actually threatened

and intimidated Tocarra; he only testified that he issued a warrant for a violation of probation after his conversation with Tocarra. Likewise, Womble did not indicate that he had personal knowledge of whether defendant actually engaged in such conduct. Rather, his testimony was offered for the permissible purpose of proving defendant's motive for the homicide, *i.e.*, his animosity toward Tocarra given her previous contact with his probation agent. See MRE 404(b)(1); *Starr*, 457 Mich at 495-496; *Unger*, 278 Mich App at 223. This testimony was especially relevant to defendant's motive to kill Tocarra given his previous threat to harm her if she reported his conduct to his probation agent.

Further, contrary to defendant's claim, Womble's testimony was not inadmissible hearsay. "Under Michigan's evidentiary rules, 'hearsay' is an unsworn, out-of-court statement that is 'offered in evidence to prove the truth of the matter asserted.' " *People v Musser*, 494 Mich 337, 350; 835 NW2d 319 (2013), quoting MRE 801(c). Generally, "[h]earsay is not admissible except as provided by [the Michigan Rules of Evidence]." MRE 802. Notably, though, "[i]f . . . the proponent of the evidence offers the statement for a purpose other than to prove the truth of the matter asserted, then the statement, by definition, is not hearsay." *Musser*, 494 Mich at 350.

The prosecutor did not ask Womble to repeat Tocarra's statement. Instead, she asked, "As a result of speaking to her, what action did you take?" When Womble stated that Tocarra "came in and indicated that he--," the prosecutor and the trial court interrupted Womble and cautioned him not to repeat Tocarra's statements. Additionally, during his testimony, the prosecutor never elicited testimony regarding the events in October 2013 that caused Tocarra to obtain a PPO and caused Womble to issue the warrant for a probation violation. Thus, Womble's testimony was not hearsay. See *Musser*, 494 Mich at 350.

Even assuming arguendo that Womble effectively repeated the content of Tocarra's report by stating that he issued a violation against defendant "for threatening and intimidating behavior," his testimony still was not inadmissible hearsay because Womble's testimony was not offered to prove what happened between Tocarra and defendant, but to explain why he issued the probation violation. See *People v Chambers*, 277 Mich App 1, 11; 742 NW2d 610 (2007) (stating that a statement offered to show why a police officer took certain action is not hearsay).

Thus, we reject defendant's claim.

### F. TESTIMONY REGARDING OTHER UNCHARGED ASSAULTS

Defendant's fourth claim of evidentiary error arises from the following testimony provided by Lewis, a fellow prisoner at the Wayne County Jail, on direct examination by the prosecutor:

> *Q*. And did he indicate anything in the June 7th conversation about his ex-wife? I think you said that he?
>
> *A*. He grabbed her. When he hit the guy, she was trying to leave. He said, this all happened June 7th. She was trying to go. He grabbed her in her throat, and I said, well, if you and him arguing that's your ex-wife, why did you grab her? He said because he was on probation.

-6-

*Q.* Right?

*A.* *And he said all his charges was assault charges which was six to eight charges on his record and they was [sic] all assaults and he said he was on probation now for assaults*, so he couldn't let her leave but he said he hit her and he said he just lost control and he kept hitting them. I said well all this blood you're hitting them with something, I mean, what happened to all the blood. Thomas said, "I cleaned up", you know, he cleaned up and was out of there in about 45 minute [sic]. I think what he said it something like about 8:00 or something when he left. It was 8:00 and he said he left about 40, 45 minute. He got two motorcycles. He said he had the 2005 Harley and the 2008 Harley but it was snow, cold so he didn't ride the Harleys. He rode her car. [Emphasis added.]

Because defendant did not object to the challenged testimony, our review of this claim is limited to plain error affecting defendant's substantial rights. *Bulmer*, 256 Mich App at 35.

The challenged testimony was not responsive to any question asked by the prosecutor, and there is no indication that the prosecutor anticipated that Lewis would reveal defendant's statements to him regarding his criminal record in the context of discussing defendant's ex-wife. "[U]nresponsive answers . . . are generally not considered prejudicial errors unless egregious or not amenable to a curative instruction." *People v Mahone*, 294 Mich App 208, 213; 816 NW2d 436 (2011) (quotation marks and citation omitted). See also *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995) ("[A]n unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial."); *People v Burch*, 170 Mich App 772, 776; 428 NW2d 772 (1988) (finding that plain error had not been shown when an unresponsive and brief remark did not deprive the defendant of a fair trial); *People v Measles*, 59 Mich App 641, 643; 230 NW2d 10 (1975) ("An unresponsive answer to a proper question is not usually error.").

Moreover, although Lewis' testimony referenced defendant's prior assault history, it did so in the context of describing defendant's explanation for why "he couldn't let [Tocarra] leave." Thus, the relevance of this testimony did not involve an impermissible propensity purpose. Instead, the testimony was probative of why defendant attacked Tocarra. As such, it was relevant to the issues of motive and intent, both of which are recognized purposes for admitting evidence under MRE 404(b)(1).

Under these circumstances, defendant has not established that Lewis' testimony constituted a plain error affecting his substantial rights.

G. UNFAIR PREJUDICE UNDER MRE 403

Lastly, defendant contends that the trial court abused its discretion in admitting the aforementioned evidence because all of it was unfairly prejudicial. See *Sabin*, 463 Mich at 55-56. We disagree.

In support of this claim, defendant merely reiterates his previous arguments in order to contend that each piece of evidence had a "slight" probative value and a "great" prejudicial effect given the likelihood that the jury would conclude from the testimony that defendant had a "general propensity for assaulting people." For the reasons previously explained, we reject

-7-

defendant's claims. Especially in light of the significant probative value of this evidence to prove defendant's motive and intent, its probative value was not outweighed by the danger of unfair prejudice. See MRE 403.

The trial court did not abuse its discretion in admitting the other-acts evidence under MRE 404(b) and MCL 769.27b(1).

### III. WITNESS COMPETENCY

Defendant argues that the trial court erred in finding Lewis competent to testify because his "testimony was so inherently incredible that the record shows that Lewis did not have the capacity and sense of obligation to testify truthfully." We disagree.

### A. STANDARD OF REVIEW

Because defendant failed to raise this issue below,[2] it is unpreserved and reviewed for plain error affecting his substantial rights. See *Carines*, 460 Mich at 762-763, 774.

### B. ANALYSIS

MRE 601 provides:

> Unless the court finds after questioning a person that the person does not have sufficient physical or mental capacity or sense of obligation to testify truthfully and understandably, every person is competent to be a witness except as otherwise provided in these rules.

"All witnesses are presumed to be competent to testify." *Watson*, 245 Mich App at 583. "The test of competency is thus whether the witness has the capacity and sense of obligation to testify truthfully and understandably." *Id*.

Although defendant correctly recognizes that assessing a witness's credibility is normally a function for the jury, *Musser*, 494 Mich at 349, he argues that Lewis' bizarre statements, such as his testimony that he has been a police informant since he was 20 years old, revealed that he lacked the capacity and sense of obligation to testify truthfully. In support of his claim, defendant also cites erroneous factual information in Lewis' testimony, such as his inaccurate reference to defendant's wife as "Flo." Accordingly, the crux of defendant's claim is that the problems with Lewis' credibility were so extreme that the trial court should have concluded from his testimony that Lewis was incompetent to testify.

Although defendant focuses on specific aspects of Lewis' testimony in challenging his competency, a witness's competency under MRE 601 is a threshold issue that should be

---

[2] During trial, defense counsel moved for an adjournment to allow him to interview Lewis before he testified, but defense counsel did not object to Lewis' testimony on incompetency grounds.

determined *before* a witness testifies. See *Watson*, 245 Mich App at 583 (stating that when a child witness is found competent to testify, "a later showing of the child's inability to testify truthfully reflects on credibility, not competency.") (quotation marks and citations omitted). Nonetheless, even in considering the content of Lewis' testimony, we reject defendant's claims. Although Lewis' statements concerning his experiences and expertise as a self-styled freelance prosecutorial investigator were at times bizarre and tended to suggest delusions of grandeur, this testimony does not demonstrate an insufficient capacity or sense of obligation to testify truthfully and understandably. A witness's delusional tendencies may be a proper subject of cross-examination, but they are generally insufficient to overcome the presumption of competency. Cf. *People v Flowers*, 222 Mich App 732, 737 n 4; 565 NW2d 12 (1997) ("The official comment to FRE 601, which [was previously] identical to our MRE 601, states: 'A witness wholly without capacity is difficult to imagine. The question is one particularly suited to the jury as one of weight and credibility, subject to judicial authority to review the sufficiency of the evidence.' "). Likewise, any factual inaccuracies inherent in Lewis' rendition of defendant's confession were matters for the jury to consider in its evaluation of the reliability and credibility of his testimony, but were not reasons for questioning his *capacity* to testify truthfully and understandably. Cf. *Watson*, 245 Mich App at 583.

Moreover, in reviewing defendant's claim for plain error, see *Carines*, 460 Mich at 762-763, 774, it is significant that much of Lewis' testimony about defendant's confession was substantially corroborated by other witnesses' testimony as well as other evidence. For example, according to Lewis, defendant argued with his ex-wife or estranged wife about parenting time with their son. Defendant told Sergeant Russell that he and Tocarra had argued about parenting time. Lewis testified that defendant received a text message from his live-in girlfriend who was unaware that defendant had left the house. This was consistent with the testimony of defendant's girlfriend that she called defendant when she awoke and discovered that he was not with her. According to Lewis, defendant said that his victim lived near an Auto Zone or "something like a car place" that had surveillance cameras. Tocarra's house was adjacent to an Auto Zone that had surveillance cameras. Additionally, Lewis testified that defendant said that he found his wife with another man, that he killed both of them, and that he was on probation for a prior offense, all of which was consistent with other evidence presented at trial. Lewis also provided additional details regarding the murders that were consistent with other witnesses' testimony. Although Lewis' statements were not completely consistent with the evidence—as he provided an incorrect name for Tocarra, there was no evidence that a statue was used as the murder weapon, and Tocarra's son, not a family member of Thomas, discovered the bodies—these discrepancies were matters for the jury to consider in evaluating Lewis' credibility.[3] They do not establish that Lewis was unable to distinguish the truth.

---

[3] Similarly, in the context of a defendant's claim that a jury's verdict was against the great weight of the evidence, we generally defer to the jury's credibility determinations unless the testimony "was so far impeached that it was deprived of all probative value or that the jury could not believe it, or [it] contradicted indisputable physical facts or defied physical realities[.]" *People v Lemmon*, 456 Mich 625, 643-647; 576 NW2d 129 (1998) (quotation marks and citation omitted). As such, "[i]n general, conflicting testimony or questions concerning the credibility of

The evidence in the record does not rebut the presumption that Lewis was competent to testify. Defendant has failed to establish a plain error affecting his substantial rights.

## IV. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that the evidence presented at trial was insufficient to establish that he committed the murders.[4] We disagree.

### A. STANDARD OF REVIEW

This Court reviews a challenge to the sufficiency of the evidence *de novo*. *People v Henderson*, 306 Mich App 1, 8-9; 854 NW2d 234 (2014). "We examine the evidence in a light most favorable to the prosecution, resolving all evidentiary conflicts in its favor, and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond reasonable doubt." *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013) (quotation marks and citation omitted). "Circumstantial evidence and reasonable inferences arising [from the evidence] may constitute proof of the elements of [a] crime." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). This Court's review is deferential, as "[w]hen assessing a challenge to the sufficiency of evidence, the trier of fact, not the appellate court, determines what inferences may be fairly drawn from the evidence and the weight to be accorded those inferences." *People v Malone*, 287 Mich App 648, 654; 792 NW2d 7 (2010), overruled in part on other grounds by *People v Jackson*, 498 Mich 246, 268 n 9 (2015). See also *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

"The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *Bennett*, 290 Mich App at 472. Defendant does not contend that any of the elements of first-degree murder were not proven in this case. He only argues that there was insufficient evidence to prove that he was the perpetrator. See *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008) ("[I]t is well settled that identity is an element of every offense.").

Defendant emphasizes that there is no physical evidence linking him to the homicides, and he dismisses the circumstantial evidence presented by the prosecution as "weak and inconclusive." Contrary to his characterization of the record, the prosecution presented substantial circumstantial evidence from which a reasonable jury could conclude beyond a reasonable doubt that he was the perpetrator of the homicides. See *Bennett*, 290 Mich App at 465.

---

the witnesses are not sufficient grounds for granting a new trial." *People v Brantley*, 296 Mich App 546, 553; 823 NW2d 290 (2012).

[4] In particular, defendant claims that "[t]he evidence, absent the incompetent testimony of Gary Lewis, was not sufficient to identify the [d]efendant as the perpetrator of the murders[.]" As previously discussed, we reject defendant's claims regarding Lewis' purported incompetency. Thus, we decline his invitation to "throw out the testimony of Gary Lewis and find that the remaining evidence was not sufficient[.]"

From the evidence discussed *supra*, a rational jury could reasonably infer that defendant had the motive and capacity to kill Tocarra and Thomas, that defendant used his girlfriend's Grand Marquis to drive to the victims' house when the crime was committed, that defendant forcibly entered the house through the side door, and that he killed Tocarra and Thomas by beating them with a two-by-four board with protruding nails, which was discovered at the scene. See *Bennett*, 290 Mich App at 472.

Defendant's conduct after the homicides further supports the jury's finding of guilt. Defendant tried to evade the police and enter the house while the police were processing the crime scene. He also "deflected" Sergeant Russell's questions by volunteering information about his sexual contacts with Tocarra and his girlfriend. During the interview, he did not ask questions about Tocarra's murder or suggest any suspects. More significantly, he confessed to Lewis that he committed the murders, and Lewis' trial testimony accurately described several details related to the homicides and the subsequent court proceedings. Although Lewis' testimony included some factual inaccuracies, the credibility of Lewis' testimony was for the jury to evaluate. See *Unger*, 278 Mich App at 222 ("[W]e will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses.").

Viewed in a light most favorable to the prosecution, the totality of the evidence was sufficient to establish beyond a reasonable doubt defendant's identity as the perpetrator. See *Dunigan*, 299 Mich App at 582.

## V. PROSECUTORIAL MISCONDUCT

Lastly, defendant argues that the prosecutor purposefully offered inadmissible evidence and asked objectionable questions in a bad-faith effort to prejudice the jury against him, which had a cumulative effect of violating his right to a fair trial. We reject defendant's claims.

### A. STANDARD OF REVIEW

Although defendant objected to some of the evidence that he cites as the basis of his prosecutorial misconduct claim, he never objected to the prosecutor's conduct during the trial. Accordingly, his claim is unpreserved and reviewed for plain error affecting his substantial rights. *Bennett*, 290 Mich App at 475-476.

### B. ANALYSIS

First, defendant's claim of prosecutorial misconduct is largely based on the evidence presented regarding his previous assault against Arnold, his threatening and intimidating conduct against Tocarra, and Lewis' reference to his history of unspecified assaults. As previously discussed, evidence concerning defendant's prior misconduct against Arnold and Tocarra was admissible, and the prosecutor was not responsible for Lewis' unresponsive reference to defendant's prior assaults. Likewise, Womble's testimony that he issued a warrant for a probation violation against defendant was permissible.

Additionally, testimony by Tocarra's sister that Tocarra obtained a PPO against defendant was relevant and admissible for the same reasons discussed *supra*, *i.e.*, to demonstrate the animosity between Tocarra and defendant in order to prove defendant's motive and intent.

-11-

See MRE 404(b); *Unger*, 278 Mich App at 223; *Aldrich*, 246 Mich App at 114, citing MRE 401. "[P]rosecutorial misconduct cannot be predicated on good-faith efforts to admit evidence." *People v Noble*, 238 Mich App 647, 660; 608 NW2d 123 (1999). Thus, these claims of misconduct lack merit.

Defendant also argues that the prosecutor committed misconduct by eliciting testimony from Sergeant Wight that defendant refused to cooperate with providing a DNA sample. Before the prosecutor called Wight to the stand, defendant moved to preclude testimony regarding this incident on relevancy grounds, but the trial court overruled the objection. It is not improper for a prosecutor to rely on a court's evidentiary ruling, regardless of whether the ruling was correct. *People v Blackmon*, 280 Mich App 253, 270 n 7; 761 NW2d 172 (2008). Nevertheless, at the end of the trial, the court instructed the jury that it should disregard any testimony regarding defendant's refusal to provide a DNA sample. Even if we assume, arguendo, that the prosecutor's elicitation of this evidence was improper, any prejudice was cured by the trial court's instruction. See *Unger*, 278 Mich App at 240-241; *Watson*, 245 Mich App at 586.

In addition, defendant argues that the prosecutor acted improperly by allowing Tocarra's son and Tocarra's mother to testify that they "knew" that defendant killed Tocarra, and by allowing Tocarra's mother to call defendant a liar and a psychopath. However, the prosecutor never elicited any testimony from Tocarra's son indicating that he had personal knowledge that defendant killed the victims. Rather, Tocarra's son specifically testified that he told the police that he believed that defendant was the perpetrator, and that he formed this belief solely based on defendant's hostility toward Tocarra a few days earlier, a fact that was clearly and permissibility established at trial.

Likewise, the prosecutor did not elicit the testimony from Tocarra's mother that she knew that defendant was involved in the murders, that defendant lied when she spoke to him on the phone on January 5, or that defendant was a psychopath. In each instance, her mother's testimony was unresponsive to the prosecutor's questions or interrupted the prosecutor's questions. Similarly, Tocarra's mother also accused defendant of lying and stated that she "knew" that defendant was involved in the murders during *defense counsel's* cross-examination of her regarding the phone calls that she made to defendant on January 5. The trial court repeatedly directed Tocarra's mother to answer the questions asked, but she continued to interject her comments on these matters during the prosecutor's redirect examination—as well as during defense counsel's recross-examination—even though both the prosecutor and the trial court reminded her to wait to respond until after a question had been asked and to only answer the question asked. "Unresponsive answers from witnesses are generally not prosecutorial error," and there is no indication that the prosecutor knew in advance that Tocarra's mother would make those statements. *People v Jackson (On Reconsideration)*, 313 Mich App 409, ___; ___ NW2d ___ (2015) (Docket No. 322350); slip op at 8.

Because defendant has not established any individual errors, we reject his claim that the cumulative effect of these purported errors violated his right to a fair trial. See *Unger*, 278 Mich App at 258.

VI. CONCLUSION

-12-

Defendant has failed to establish that any of his claims of error on appeal warrant reversal.

Affirmed.

/s/ Stephen L. Borrello
/s/ Jane E. Markey
/s/ Michael J. Riordan